# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

2019 ND 193

Newfield Exploration Company, Newfield
Production Company, and Newfield RMI LLC,          Plaintiffs and Appellees

     v.

State of North Dakota, ex rel. the North
Dakota Board of University and School Lands,
and the Office of the Commissioner of University
and School Lands, a/k/a the North Dakota
Department of Trust Lands,                        Defendants and Appellants

No. 20190088

Appeal from the District Court of McKenzie County, Northwest Judicial
District, the Honorable Robin A. Schmidt, Judge.

REVERSED.

Opinion of the Court by Jensen, Justice.

Spencer D. Ptacek (argued) and Lawrence Bender (appeared), Bismarck, ND,
for plaintiffs and appellees.

David P. Garner, Office of the Attorney General, Bismarck, ND, for
defendants and appellants.

**Newfield Exploration Company v. State**
**No. 20190088**


**Jensen, Justice.**

[¶1]     The State of North Dakota, ex rel. the North Dakota Board of University and School Lands, and the Office of the Commissioner of University and School Lands, a/k/a the North Dakota Department of Trust Lands ("the State") appeals from a district court's judgment interpreting the royalty provisions of natural gas leases with Newfield Exploration Company, Newfield Production Company, and Newfield RMI LLC ("Newfield").  The State argues the district court's interpretation of the leases improperly allows the reduction of the royalty payments to account for expenses incurred to make the natural gas marketable.  We reverse.

I.

[¶2]     Newfield operates numerous gas-producing wells throughout North Dakota. Newfield has entered into leases with the State which calculate gas royalties based upon "gross production or the market value thereof, at the option of the lessor, such value to be determined by . . . gross proceeds of sale . . . ."  The State initiated an audit of Newfield in June 2016.  The State alleges the audit revealed Newfield is underpaying the gas royalties required by the leases.  Specifically, the State contends Newfield is paying royalties based on gross proceeds reduced to account for deductions necessary to make the gas marketable and that reducing the gross payments by those deductions is contrary to the express terms of the lease.  Newfield contends it has paid the royalties based on the gross proceeds it has received from the sale of the gas to Oneok Rockies Midstream L.L.C.

[¶3]     Newfield operates gas-producing wells subject to leases with the State that require the royalties payable to the State to be calculated based on gross proceeds from the sale of the gas.  Newfield subsequently entered into an agreement to sell the gas produced at the wells to Oneok.  Title to the gas passes to Oneok when it receives the gas from Newfield, but payment to Newfield is delayed until after Oneok

1

processes the gas into a marketable form and sells the marketable gas. The price Oneok pays to Newfield for the gas is calculated based on 70-80% of the amount received by Oneok when Oneok sells the marketable gas. The 20-30% reduction of the price for which the marketable gas is sold accounts for Oneok's cost to process the gas into a marketable form and profit.

[¶4] Newfield initiated litigation requesting a judgment declaring the royalty payments at issue to have been properly calculated based on the gross amount paid to Newfield by Oneok. Both parties moved for summary judgment. The district court agreed with Newfield's interpretation of the leases and held the leases required the royalty payments to be based upon the gross amount Newfield receives from Oneok. On appeal, the State argues the court erred in interpreting the leases, and the court's interpretation improperly requires the State to share in post-production costs incurred to make the gas marketable.

## II.

[¶5] This Court's standard for reviewing a district court's decision granting summary judgment under N.D.R.Civ.P. 56 is well established:

> Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. . . . Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.

*Johnson v. Statoil Oil & Gas LP*, 2018 ND 227, ¶ 6, 918 N.W.2d 58 (quoting *Estate of Christeson v. Gilstad*, 2013 ND 50, ¶ 6, 829 N.W.2d 453). With regard to the interpretation of oil and gas leases, this Court has stated:

> The same general rules that govern interpretation of a contract apply to oil and gas leases. The construction of a written contract to determine its legal effect is a question of law and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation.

2

Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning. A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the parties' true intent.

*Johnson*, ¶¶ 7-8 (citations omitted).

[¶6] Typically, when natural gas is extracted, it contains hydrogen sulphide, which requires removal to make the product marketable. *West v. Alpar Res., Inc.*, 298 N.W.2d 484, 487 (N.D. 1980). The general rule requires the lessor and lessee to share the costs of making the product marketable. *Id.* at 48. However, the parties may contract around the general rule and allocate the expense of making the gas marketable. *Id.* In an oil and gas contract, the term "gross proceeds" indicates a lessor's royalty is calculated based on the total amount received for the product without deductions for making the product marketable. *Id.* at 489-90. "Net proceeds" indicates the lessor will share in the costs of making the product marketable—thus reducing the royalty payment. *Id.* at 490-91.

[¶7] Here, the relevant royalty provisions read:

Lessee agrees to pay lessor the royalty on any gas, produced and marketed, based on gross production or the market value thereof, at the option of the lessor, such value to be based on gross proceeds of sale where such sale constitutes an arm's length transaction.

. . . .

All royalties on oil, gas, carbon black, sulphur, or any other products shall be payable on an amount equal to the full value of all consideration for such products in whatever form or forms, which directly or indirectly compensates, credits, or benefits lessee.

[¶8] Under N.D.C.C. § 15-05-09, the State may lease lands under its control for gas exploration and establish rules and regulations with regard to the leases. The Department of Land Trust's website contains guidance regarding the payment of royalties from oil and gas leases. The Department's guidance is consistent with our decision in *West* and provides as follows: "gross proceeds of sale means income

3

before deduction of expenses. Basically it means the price you sell the oil for, regardless of what expenses go into arriving at that price."

[¶9]   The parties agree had Newfield itself incurred expenses to make the gas marketable, or if Newfield had directly paid Oneok to make the product marketable for Newfield to sell, the State would be compensated based on the price received from the sale of the gas after it was made marketable and without reduction for the costs required to make the product marketable. The State argues because the price paid to Newfield by Oneok is reduced to account for the cost of processing the gas into a marketable form, the result is no different than if Newfield itself had incurred the expense to process the gas into marketable form or retained title to the gas and paid Oneok to process the gas into marketable form. The State contends it is being required to share in the post-production costs contrary to the leases.

[¶10]   Newfield asserts the plain language of the leases requires the State's royalties to be calculated on the payment Newfield receives for the gas from Oneok, regardless of whether that payment is reduced to account for expenses incurred by Oneok to make the gas marketable. Essentially, Newfield argues it can pay a royalty based on a payment that has been reduced to account for the expense of making the gas marketable, as long as the expense is incurred by a third party.

[¶11]   Our review of the leases indicates the circumstances at issue were anticipated and governed by Subpart (f) of the lease defining royalties. Subpart (f) states, "All royalties on . . . gas . . . shall be payable on an amount equal to the full value of all consideration for such products in whatever form or forms, which directly or indirectly compensates, credits, or benefits lessee." While title to the gas passes at the well, the transaction is not complete, and full value of the consideration paid to Newfield is not determined until Oneok has incurred the cost of making the gas marketable and subsequently sold the marketable gas. Newfield's compensation is calculated based on the amount Oneok receives for the marketable gas. This amount, from which Newfield attempts to base the State's royalties, is reduced to account for the expenses Oneok incurred to make the gas marketable. Newfield directly benefits,

4

or at the very least indirectly benefits, from the expenses Oneok incurs to make the gas marketable. Subpart (f) of the lease unambiguously provides the State's royalty must include the value of any consideration, in whatever form, that directly or indirectly compensates, credits, or benefits Newfield. Here, Newfield unquestionably benefits from Oneok's expenditures to make the gas marketable. Calculation of the royalties paid to the State based on an amount that has been reduced to account for expenses incurred to make the gas marketable, even though the cost to make the gas marketable only indirectly benefits Newfield, is contrary to the leases.

## III.

[¶12] Gross proceeds from which the royalty payments under the leases are calculated may not be reduced by an amount that either directly or indirectly accounts for post-production costs incurred to make the gas marketable. We reverse the district court's judgment.

[¶13]  Jon J. Jensen
      Lisa Fair McEvers
      Daniel J. Crothers
      Jerod E. Tufte

      I concur in the result.
      Gerald W. VandeWalle, C.J.