# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 06-3408

_____

Ramona Humann,

    Plaintiff/Appellant,

v.

KEM Electric Cooperative, Inc.;
Michael D. Rudolph; Thomas B. Bair,

    Defendants/Appellees.

 

Appeal from the United States
District Court for the
District of North Dakota.

_____

Submitted: March 12, 2007
Filed: August 13, 2007

_____

Before WOLLMAN, JOHN R. GIBSON, and MURPHY, Circuit Judges.

_____

JOHN R. GIBSON, Circuit Judge.

Ramona Humann appeals from the district court's[1] entry of summary judgment against her in her claim against her former employer, KEM Electric Cooperative, Inc., her former boss, Michael Rudolph, and the lawyer for KEM, Thomas Bair. Humann asserted four state law claims arising out of her firing in December 2003 and one federal claim for overtime under the Fair Labor Standards Act; the district court entered summary judgment against her on each count. Humann v. KEM Elec. Coop.,

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota.

Inc., 450 F. Supp. 2d 1006 (D.N.D. 2006).  The district court also taxed costs against Humann.  On appeal, Humann contends that the district court overlooked genuine issues of material fact and that the district court should have taxed costs in accordance with state law, not federal.  We affirm.

We state the facts in the light most favorable to Humann.  Humann was fired from her job at KEM, a rural electric cooperative, where she had worked for twenty-eight years, most recently as Manager of Member Services.  The trouble began when Michael Rudolph, the General Manager of the cooperative, assigned Humann the task of conducting 900 inspections of the cooperative's load management system.  In response, Humann wrote Rudolph a memorandum on November 14, 2003, asking a number of questions about how to accomplish this task in addition to her other work.  On November 18, 2003, Rudolph called her into his office, told her she was being placed on five days' administrative leave, and asked for her keys to the offices.  That same day, KEM's lawyer Tom Bair called Humann at her home and asked her if she could work with Rudolph, to which Humann replied that she would not be able to work with Rudolph because she didn't trust him.  Bair then offered Humann a severance payment of $28,000.  Rudolph then sent Humann a letter, stating that Humann had "had several telephone conversations with our attorney concerning the terms of a settlement/severance package," and that "your suspension with pay will continue until you receive a written settlement/severance offer."

At that point, Humann retained a lawyer, Stephen Little, who contacted Bair and told him that he represented Humann.  Bair wrote Little a letter dated December 9, 2003, in which he recounted that Humann had said she would not return to work and said that KEM would consider any reasonable settlement offer put forth by Humann.  Little responded with a letter dated December 10, 2003, stating that Humann had a prima facie case for both sex and age discrimination, for which reinstatement or front pay would be the proper remedy.  Humann demanded four months' salary, as well as retirement and insurance benefits through March 2006,

when she would retire. Bair calculated the cost of this demand at $150,000 to $175,000.

Rather than making any further offer, Bair sent Little a letter on December 17, 2003, stating that Humann's employment at KEM was terminated and giving a number of reasons, such as insubordination and failure to perform her job satisfactorily.

Humann brought suit in state court in North Dakota against Rudolph, Bair, and KEM. She alleged that KEM had represented that her continued employment depended on her satisfactory performance and that it was therefore estopped from firing her as long as her performance was satisfactory; that Bair's letter to Little of December 17, 2003, had defamed her; that Rudolph had tortiously interfered with her employment contract with KEM; that KEM owed her overtime compensation under the FLSA; and that Rudolph and Bair had committed deceit by telling her that she was on administrative leave pending the offer of a severance package, whereas they actually intended to fire her.

The defendants removed the suit to federal court based on the FLSA claim and filed motions for summary judgment. The district court concluded that (1) there was not sufficient evidence to support Humann's equitable estoppel claim that she had been told her employment would continue as long as her performance was satisfactory, Humann, 450 F. Supp. 2d at 1012-13; (2) there was not sufficient evidence to support her deceit claim that the defendants falsely told her she would be placed on administrative leave, since she was in fact put on administrative leave until December 17, 2003, and there was no evidence that the defendants intended to terminate her when she was first put on leave, id. at 1013-14; (3) her tortious interference of contract claim failed because the interference must be with a contract between the plaintiff and a third party, whereas the defendants were the contracting party or its agents, id. at 1014-15; (4) the letter sent to her attorney announcing her termination was privileged and therefore could not be the basis of a defamation claim,

-3-

id. at 1016-17; and (5) Humann was exempt from the overtime requirements of the FLSA because she was an administrative employee under 29 U.S.C. § 213(a)(1), see 450 F. Supp. 2d at 1019.

We review the district court's grant of summary judgment de novo, examining the record in the light most favorable to Humann to determine whether there are genuine issues of material fact. Hope v. Klabal, 457 F.3d 784, 790 (8th Cir. 2006).

We address Humann's arguments on appeal with difficulty because, although she argues that the district court failed to recognize disputes of fact, she does not organize the myriad of factual points into coherent legal theories. As a result, it is difficult to distinguish material factual disputes from those that are irrelevant to the district court's legal reasoning. For instance, Humann argues at length about the truth of Bair's assertions in the December 17 letter, whereas the district court held that the letter was privileged, so that the truth of the assertions was beside the point. We will address the arguments that appear most substantial.

Humann argues that the district court erred in rejecting her claim of equitable estoppel based on the statement in the KEM policy bulletin, "Continued employment will depend upon the employee's satisfactory performance and the Cooperative's determination of the need for their services." The policy does not say that continued employment will depend only upon the employee's satisfactory service, and it could not be interpreted to say that, since the very same policy stated that the employment "has no specified term and may be terminated at the will of either the employee or the Cooperative on notice to the other." Moreover, Humann signed a receipt stating that she acknowledged that her employment could be terminated at will. Humann relies on Hunt v. Banner Health Sys., 720 N.W.2d 49, 54 (N.D. 2006), in which the employer's handbook did not indicate whether the employment was at-will. Here, in contrast, the very policy Humann relied on stated unambiguously that employment

was at will. Humann has adduced no evidence that KEM assured her of continued employment.

Humann argues that the district court erred in holding the letter of December 17, 2003, from KEM's attorney to hers was privileged, since she says there was no proposed or threatened judicial proceeding to render it privileged under N.D. Cent. Code § 14-02-05. Little's letter referred to a "prima facie" case, "remedies," and "actions against KEM." There can be no doubt that Little's letter threatened a judicial proceeding and that Bair's letter was in response to Little's and concerned possible defenses to Little's allegations.

Humann contends that the district court erred in holding that she was exempt from the Fair Labor Standards Act. Humann contends that KEM advised her that if she wanted to be covered under the Act, she would have to take a cut in pay, which she contends amounts to a threat of retaliation for asserting her right to overtime. This distorts the record. Rudolph testified that in applying the Fair Labor Standards Act rules, KEM determined that Humann's job was exempt because she was the head of a stand-alone department and that for her to be covered, her job would have to be reconfigured to a less responsible position. He testified:

> So it got down to the point of if we classified her as a nonexempt employee, she could not have a stand-alone department and would be put under one of the other departments as–and quite possibly demoted in a position or reduced in a staff pay . . . .

This testimony shows that KEM was trying to apply the Fair Labor Standards Act regulations to the job as it was currently configured, not that it was retaliating against or disciplining Humann.

Humann also contends that the district court erred in taxing costs in accordance with Fed. R. Civ. P. 54(d), instead of in accord with state law. The award of costs in

federal court is governed by Rule 54(d), rather than by state law that conflicts with Rule 54.  Abrams v. Lightolier, Inc., 50 F.3d 1204, 1223 (3d Cir. 1995); 10 Charles Alan Wright, et al., Federal Practice & Procedure § 2669 (1998).  The district court did not err in following Rule 54.

We have reviewed Humann's various other arguments and find them all to be without merit.  The judgment of the district court is affirmed.

_____