# United States Court of Appeals
## For the Eighth Circuit
_____

No. 23-1147
_____

Continental Resources, Inc., an Oklahoma corporation

*Plaintiff - Appellant*

v.

Rick Fisher; Rosella Fisher

*Defendants - Appellees*
_____

Appeal from United States District Court
for the District of North Dakota - Western
_____

Submitted: October 18, 2023
Filed: May 24, 2024
_____

Before SMITH, Chief Judge, [1] LOKEN and COLLOTON, [2] Circuit Judges.
_____

SMITH, Chief Judge.

_____

[1]Judge Smith completed his term as chief judge of the circuit on March 10, 2024. *See* 28 U.S.C. § 45(a)(3)(A).

[2]Judge Colloton became chief judge of the circuit on March 11, 2024. *See* 28 U.S.C. § 45(a)(1).

Continental Resources, Inc., (Continental) brought a declaratory judgment action against Rick and Rosella Fisher (the Fishers), claiming it was not liable to the Fishers for injecting saltwater into the pore space beneath the Fishers' farm. The Fishers counterclaimed for damages from Continental's use of their pore space. At trial, Continental moved for judgment as a matter of law. The district court[3] denied the motion. The jury returned a verdict for the Fishers and awarded them $22,440.25. Continental then renewed its motion for judgment as a matter of law and, in the alternative, moved for a new trial. The Fishers moved for an award of attorneys' fees and costs. The district court denied Continental's motion and awarded the Fishers $249,243.60 in attorneys' fees and $87,639.89 in costs. Continental appeals. We affirm.

## I. *Background*

The Fishers reside in Montana but own the surface estate of and partial mineral rights to a farm in North Dakota. The farm is part of a unitized oil and gas operation, the Cedar Hills North Red River "B" Unit. Continental, an Oklahoma oil and gas company, operates the unit.

In 2013, Continental drilled a horizontal disposal well on the Fishers' property to inject saltwater waste into the pore space[4] of a rock formation known as the Lodgepole. This pore space is located a mile and a half below the surface of the earth. Because water in the Lodgepole met drinking-water standards, Continental was legally required to obtain an aquifer exemption before injecting saltwater. The Environmental Protection Agency and the North Dakota Industrial Commission

---

[3]The Honorable Charles S. Miller, Jr., United States Magistrate Judge for the District of North Dakota, to whom the case was referred for final disposition by consent of the parties pursuant to 28 U.S.C. § 636(c).

[4]Pore space is "a cavity or void, whether natural or artificially created, in a subsurface sedimentary stratum." N.D. Cent. Code § 47–31–02.

granted Continental this exemption, allowing it to pump up to 38,813,976 barrels of saltwater into the pore space within a quarter mile of the horizontal wellbore.

The Fishers sued Continental, contending that Continental had no right to drill the well. That action resulted in a ruling that Continental did indeed have the right to proceed with drilling and using the well as long as the use was reasonable. The district court also ruled, however, that the Fishers were entitled to compensation for any proven damage to their pore space. *See Fisher v. Cont'l Res., Inc.* (*Fisher I*), No. 1:13-cv-097, 2015 WL 11400124, at *6 (D.N.D. Oct. 8, 2015). Thereafter, the Fishers settled their claim for surface damages from construction of the well. Because Continental had not yet begun to use the well, the parties left for another day whether the Fishers were entitled to damages for the injection of saltwater into their pore space.

That day came in 2018, when Continental began injecting saltwater. Continental sued the Fishers, seeking a declaratory judgment that the Fishers were not entitled to further compensation. The Fishers counterclaimed, seeking a declaratory judgment and compensation for the use of their pore space. Both parties moved for summary judgment. The district court granted both motions in part, holding that the Fishers own the pore space but dismissing "[a]ny claim by the Fishers that Continental has failed to reasonably accommodate uses of their property." *Cont'l Res., Inc. v. Fisher*, No. 1:18-cv-181, 2021 WL 665102, at *7 (D.N.D. Feb. 19, 2021).

On November 29, 2021, the district court granted summary judgment to Continental on the Fishers' claim for future damages, holding that future damages were then too speculative but noting that the Fishers could bring future claims at the appropriate time. The court also limited the Fishers' recovery to payment "for injections of saltwater that reasonably [could] be shown to occupy their pore space." *Cont'l Res., Inc. v. Fisher*, No. 1:18-cv-181, 2021 WL 5567303, at *15 (D.N.D. Nov. 29, 2021). The court noted that the evidence showed that saltwater was injected

along the entire length of the wellbore and that, although the wellhead was on the Fishers' property, only about a third of the wellbore occupied their pore space.

In October 2022, the district court held a jury trial. Both sides presented expert testimony. Continental presented evidence that it had withdrawn about 728 million barrels of water from the Lodgepole, while it had injected about 97 million barrels of saltwater. Of the 97 million barrels, only about 1,339,317 were injected into the well at issue, and only about 448,805 were injected into the Fishers' pore space. Continental's expert testified that when the injections cease, "the pressure drops immediately to zero," showing "that the reservoir is taking fluid readily," so "there's still very good access to the pore space and there's been no loss of use." R. Doc. 201, at 103. Thus, Continental argued that, rather than diminish the Fishers' pore space, it had created a net gain of pore space.

To prove damages, the Fishers offered evidence of Continental's payments to other landowners for the use of their pore space. They also introduced the amounts North Dakota collects for the use of its pore space. Specifically, the Fishers introduced numerous contracts between the North Dakota Board of University and School Lands and third parties and between Continental and third parties. These contracts reflected per-barrel payments of between $0.05 and $0.10. Continental objected that these contracts covered rights in addition to the right to use pore space, such as the right to use the surface. Because Continental had already compensated the Fishers for surface damages, Continental argued that these contracts were not probative of the Fishers' pore space damages. The district court, nonetheless, admitted the contracts. Additionally, the district court allowed Rick Fisher to testify, over Continental's objection, that he thought $0.10 per barrel would be a fair rental value for the use of the Fishers' pore space.

At trial, Continental moved for judgment as a matter of law, arguing that the Fishers had not proved that they had lost use of or access to their pore space. The court denied that motion. The jury returned a verdict for the Fishers and awarded them $22,440.25, which represented $0.05 per barrel of saltwater injected into the

-4-

Fishers' pore space. Continental renewed its motion for judgment as a matter of law and alternatively moved for a new trial. The court denied both motions.

Post trial, the Fishers moved for an award of $491,957.42 in attorneys' fees and costs and provided an affidavit and exhibits showing hours worked. Continental argued that some of these hours were excessive, redundant, or unnecessary and that the court should reduce any award for lack of success. The court divided the attorneys' fees into those incurred prior to its November 29 order granting summary judgment and those incurred afterward. The court applied a 25-percent reduction for lack of success and a 15-percent reduction for duplicative, non-productive, or unnecessary work to fees incurred before the November 29 order. The court applied a 20-percent reduction for unnecessary work to fees incurred after that order.

The court also disallowed a portion of the Fishers' expert witness fees, as part of its award of costs, because some of the experts' work pertained to a claim for future injections. The court did enable recovery of 90 percent of the fee for the Fishers' geological expert, Gary Hughes. In doing so, the court noted that "given the arguments advanced by Continental . . . , obtaining the technical assistance of these experts was reasonable even if all of their work was not the subject of their trial testimony," as the experts assisted in "obtaining an understanding of the geology . . . and the characteristics of the formation, including its porosity." *Cont'l Res., Inc. v. Fisher*, No. 1:18-cv-181, 2022 WL 17960531, at *18 (D.N.D. Dec. 27, 2022). Continental appeals.

## II. *Discussion*

We have jurisdiction pursuant to 28 U.S.C. §§ 1291 and 1332. State law controls some of the issues on appeal, but federal law controls our standard of review. *Kramer v. Cash Link Sys.*, 715 F.3d 1082, 1086 (8th Cir. 2013).

Continental raises three issues. First, it argues that there was insufficient evidence to support the jury's verdict that the Fishers lost access to or use of their pore space. Second, it argues that the district court erred in admitting Rick Fisher's

opinion testimony as to the value of his pore space and in admitting, as evidence of damages, contracts between Continental and third parties and between North Dakota and third parties. Third, Continental argues that the district court abused its discretion in awarding attorneys' fees and costs. None of these arguments prevail.

## A. *Lost Use or Access*

We review de novo a district court's denial of a motion for judgment as a matter of law. *Racicky v. Farmland Indus., Inc.*, 328 F.3d 389, 393 (8th Cir. 2003). But we view "the record in a light most favorable to the verdict." *Ryan Data Exch., Ltd. v. Graco, Inc.*, 913 F.3d 726, 732 (8th Cir. 2019). "[T]he law places a high standard on overturning a jury verdict because of the danger that the jury's rightful province will be invaded when judgment as a matter of law is misused." *Id.* (alteration in original) (quoting *Washington v. Denney*, 900 F.3d 549, 558 (8th Cir. 2018)). Thus,

> [i]n ruling on a motion for [judgment as a matter of law], the district court must (1) consider the evidence in the light most favorable to the prevailing party, (2) assume that all conflicts in the evidence were resolved in favor of the prevailing party, (3) assume as proved all facts that the prevailing party's evidence tended to prove, and (4) give the prevailing party the benefit of all favorable inferences that may reasonably be drawn from the facts proved. That done, the court must then deny the motion if reasonable persons could differ as to the conclusions to be drawn from the evidence.

*Id.* at 732–33 (second alteration in original) (quoting *Washington*, 900 F.3d at 558–59).

Continental argues that it is entitled to judgment as a matter of law because the Fishers failed to prove that they were damaged by the injection of saltwater into their pore space. Because Continental withdrew freshwater from the rock formation and withdrawals of freshwater exceeded injections of saltwater, Continental argues that it actually created more space for the Fishers to use. Thus, Continental argues

that the Fishers suffered no loss of use or access to their pore space. The jury was not persuaded. Neither are we.

North Dakota law provides that "[t]he mineral developer shall pay the surface owner a sum of money equal to the amount of damages sustained by the surface owner . . . for lost land value, lost use of and access to the surface owner's land, and lost value of improvements caused by drilling operations." N.D. Cent. Code § 38–11.1–04. The North Dakota Supreme Court interpreted this statute in *Mosser v. Denbury Resources, Inc.*, 898 N.W.2d 406 (N.D. 2017). In *Mosser*, the court concluded "that pore space is part of the surface owner's interest in the land" and that "a surface owner may be entitled to compensation under [this statute] for a mineral developer's use of the surface owner's subsurface pore space for disposal of saltwater." *Id.* at 415. The court held that surface owners need not prove "a diminution in market value" nor show that they had plans to use the pore space. *Id.* at 417. Instead, owners may recover damages for "mere occupancy or loss of access to the pore space." *Id.* at 415. Additionally, the court noted that an owner may recover damages

> when the only evidence upon which to calculate damages is (1) proof of what is being paid to other surface owners for the use of their pore space for the disposal of saltwater on a per barrel basis (assuming the third party transactions being relied upon are "arms length" and fairly comparable); and (2) evidence of the number of barrels of injected saltwater that, more likely than not, is occupying the surface owner's pore space[.]

*Id.* at 416.

After *Mosser*, the North Dakota Legislative Assembly attempted to block surface owners from recovering damages for use of their pore space. *See* 2019 N.D. Laws 300, *invalidated in part by Nw. Landowners Ass'n v. State*, 978 N.W.2d 679 (N.D. 2022). The North Dakota Supreme Court subsequently held that the legislation

was unconstitutional under the takings clauses of the federal and state constitutions. *See Nw. Landowners*, 978 N.W.2d at 693–95, 699. The court stated:

> Surface owners have a right to compensation for the use of their pore space for disposal and storage operations. Although an oil and gas operator has a right under the implied easement to dispose of waste water within the same unit or pool, the operator must compensate the surface owner for the disposal of waste.

*Id.* at 692 (citation omitted).

Continental possesses an aquifer exemption that allows it to inject up to 38,813,976 barrels of saltwater into the well. Continental argues that its injection of 1,339,317 barrels of saltwater as of the date of trial, with 448,805 barrels going into the Fishers' pore space, did not cause the Fishers any loss of use because Continental has withdrawn a greater amount of water from the same rock formation. Continental's net-gain argument misses the point. Under North Dakota law, the Fishers are entitled to compensation for lost use of their pore space. Continental has pumped 448,805 barrels of saltwater into the Fishers' pore space. That water took up space, at least for some time. Even if the water eventually migrated into other areas of the Lodgepole, the jury still could have found that the Fishers had lost use of their pore space temporarily. And the jury was not required to credit Continental for the withdrawals Continental made from the Lodgepole from other sites, for Continental's benefit and without the Fishers' agreement.

Additionally, the parties' experts offered contradictory testimony as to whether withdrawals would increase the Fishers' pore space. Continental's expert testified that they would. One of the Fishers' experts, Paul Button, testified that assuming the withdrawals directly affected the wellbore at issue, the withdrawal of water would create "more capacity to inject at lower pressures." R. Doc. 200, at 107. But he also testified that removing more water than is injected could actually cause pressure that would make the rock itself "shrink," thereby reducing the pore space within. *Id.* at 98.

-8-

Furthermore, the evidence showed that Continental withdrew drinking-quality water from the Lodgepole and injected saltwater. Button testified on cross examination that, with the proper permits, the Fishers could withdraw fluids from their pore space. But it is unclear what fluids the Fishers would *want* to withdraw if Continental has removed drinking-quality water and replaced it with saltwater. And under North Dakota law, entitlement to recovery does not depend on "interference with the surface owner's actual use of the pore space or a concrete plan to do so in the reasonably near future or evidence of diminution in the market value of the property affected." *Mosser*, 898 N.W.2d at 415–16. The Fishers conceded at trial that the water in their pore space lies too deep underground to be presently useful for drinking water. But Button testified that, as drinking water becomes scarcer, it may become more economical to extract deep water. On the record before it, the jury could have reasonably concluded that the Fishers have lost use of or access to their pore space, even if they currently have no plans to obtain freshwater or to inject wastewater or gases.

Under *Mosser*, evidence of damage is sufficient if it includes the number of barrels injected, which was undisputed here, and other arm's length, fairly comparable contracts showing a price per barrel, which as discussed below, the Fishers provided. The district court correctly denied Continental's motions for judgment as a matter of law.

B. *Admissibility of the Valuation Evidence*

"[W]e review the district court's evidentiary rulings for an abuse of discretion and will reverse 'only if the evidentiary ruling was a clear and prejudicial abuse of discretion,' meaning it 'had a substantial influence on the jury's verdict.'" *Jacobson Warehouse Co. v. Schnuck Mkts., Inc.*, 13 F.4th 659, 675 (8th Cir. 2021) (quoting *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 770–71 (8th Cir. 2020)). The Federal Rules of Evidence apply in diversity cases. *Wood v. Valley Forge Life Ins. Co.*, 478 F.3d 941, 945 (8th Cir. 2007).

### 1. *Rick Fisher's Testimony*

At trial, Rick Fisher testified as to the rental value of his pore space. Continental argues that the district court erred in permitting this testimony because Rick Fisher had no personal knowledge of or experience using pore space.

We generally permit owners to testify as to their opinions of the value of their property.[5] "A landowner is presumed to have special knowledge of his property. His testimony as to the value of his land is therefore 'admitted in federal courts *without further qualification*.' This is true even when the landowner's figures exceed the assessments made by expert witnesses." *United States v. 79.20 Acres of Land*, 710 F.2d 1352, 1357 (8th Cir. 1983) (citation omitted) (quoting *United States v. 3,698.63 Acres of Land*, 416 F.2d 65, 67 (8th Cir. 1969)).

Continental acknowledges that an owner's opinion is generally admissible but argues that it should not be admitted when the owner has no basis for that opinion. But we have distinguished between the *admissibility* of an owner's opinion and the *sufficiency* of that opinion to support a damages award. *See 3,698.63 Acres*, 416 F.2d at 67–69. Admissibility depends on the presumption that an owner has special knowledge; sufficiency and weight depend on the *basis* for the owner's opinion. *See id.*

For example, in *3,698.63 Acres*, we held that the opinion testimony of a landowner was admissible under the general presumption, even though he had owned his land only six months, had obtained no income from the land, and was generally unfamiliar with its past uses. *Id.* The owner's lack of knowledge was relevant to the weight of his testimony, but we did not reach the question whether his testimony would be sufficient to support the verdict because another landowner with personal knowledge had testified to the same value. *Id.* at 68–69.

---

[5]As noted, federal law controls here, but North Dakota courts likewise allow owners to testify as to their opinion of the value of their land. *See In re Est. of Froemke*, 994 N.W.2d 419, 427 (N.D. 2023).

Rick Fisher's testimony was a statement of opinion as to fair rental value. It was admissible under the general rule. As with the owner in *3,698.63 Acres*, Rick Fisher's limited experience valuing pore space goes to the weight of his testimony, not its admissibility.

Continental relies on *United States v. 91.90 Acres of Land*, 586 F.2d 79 (8th Cir. 1978). But *91.90 Acres* is distinguishable. In that case, we held that a corporate owner's employees should not have been allowed to estimate the size and sale price of the clay in a deposit on condemned land. *Id.* at 88. In addition to being speculative, the testimony was part of an improper valuation method whereby the components of the land were valued separately and added to the surface value. *Id.* at 87–89. And we did not consider whether an owner's *agents* can testify under the general rule allowing an owner to opine on the value of land.

Unlike the employees in *91.90 Acres*, Rick Fisher did not speculate as to the size or value of a subsurface deposit, but instead simply gave his opinion as to the rental value of his pore space. And Rick Fisher is an owner, not an employee or agent of an owner. His testimony was admissible under the general rule, and *91.90 Acres* does not require exclusion. The court did not abuse its discretion in allowing this testimony.

Furthermore, Rick Fisher's testimony did not have "a substantial influence on the jury's verdict." *Jacobson Warehouse*, 13 F.4th at 675 (quoting *Vogt*, 963 F.3d at 771). Counsel for the Fishers asked Rick Fisher his measure of a fair rental. He responded, "I believe ten cents a barrel is fair." R. Doc. 200, at 127. This brief comment, one statement out of three days of testimony, was clearly treated as an opinion. Counsel for the Fishers discussed this opinion in closing argument but did not unduly focus on it. And the jury did not give it undue weight—the jury awarded the Fishers only five cents a barrel. Thus, Continental has shown no reversible error.

## 2. *Third-Party Contracts*

Continental also argues that the district court abused its discretion by admitting, as evidence of damages, contracts between Continental and third parties as well as contracts between North Dakota and third parties. Continental contends that these contracts are not fairly comparable evidence of the value of the Fishers' pore space because they included per-barrel payments as compensation for other rights, such as surface rights, easements, pipeline access, ingress and egress, and the right to dispose of off-lease saltwater. Continental argues that none of the contracts made clear that its per-barrel rate was solely for the use of pore space.

Although federal law controls the admissibility of evidence, North Dakota law dictates what evidence suffices to establish a party's claim. *See Roberson v. AFC Enters., Inc.*, 602 F.3d 931, 933–34 (8th Cir. 2010); *Cont'l Can Co. v. Horton*, 250 F.2d 637, 640 (8th Cir. 1957). The North Dakota Supreme Court has made clear that a landowner seeking damages for the use of pore space need not show any diminution in market value or interference with an actual plan to use that pore space. *Mosser*, 898 N.W.2d at 415–17. The court noted that "the price per barrel others are paying for saltwater disposal may provide some probative evidence of the amount a surface owner may be damaged for 'lost use of and access to the surface owner's land.'" *Id.* at 417 (quoting N.D. Cent. Code § 38–11.1–04). But the court declined to "speculate on the extent of the evidence a surface owner may proffer to establish lost use of and access to a surface owner's land, because the probative effect and admissibility of proffered evidence is a matter for a trial court's discretion." *Id.* (citing Fed. R. Evid. 401–03; N.D. R. Evid. 401–03).

Given this evidentiary landscape, the district court did not abuse its discretion in admitting these contracts. We find instructive our precedents concerning condemnation awards. We have held, for instance, that a district court did not abuse its discretion in admitting evidence of a contract for the sale of land executed *after* a government project was announced, even though we noted "the scope of the project rule" that increases caused by such an announcement must be disregarded in

determining an award. *United States v. 428.02 Acres of Land*, 687 F.2d 266, 269, 272 (8th Cir. 1982). We said:

> [W]hen the trial judge effectively precludes all evidence of sales, or contracts for sale, of property that is comparable to the property being condemned, the ultimate goal of just compensation may be defeated. Accordingly, "(s)ound and just trial practice is to admit as many of the 'most comparable' sales available as is necessary to fairly permit each side to present its argument of fair market value for the jury's consideration."

*Id.* at 270–71 (second alteration in original) (quoting *United States v. 320.0 Acres of Land*, 605 F.2d 762, 798 (5th Cir. 1979)). In *428.02 Acres*, the jury faced a difficult task in valuing the property at issue, and we noted that "a liberal view toward the admissibility of any and all evidence that would aid the fact finders in arriving at a fair market value would seem essential." *Id.* at 272. The possibility that the contract price was inflated because of the announced project went to the contract's weight, not its admissibility. *Id.* at 270–72, 271 n.4; *see also Nemmers v. City of Dubuque*, 764 F.2d 502, 505 (8th Cir. 1985) ("Because exact comparability is difficult to achieve (short of a recent sale of the same property), the relative importance of the sale of comparable property is reflected in the weight it is given by the trier of fact in the particular proceeding.").

Here, the district court correctly admitted a variety of contracts for the injection of saltwater into other landowners' pore space. The Fishers were not required to find contracts that reflected compensation for the exact rights, and only the exact rights, at issue in their claim. The sheer number of contracts admitted, and the fact that they were admitted in their entirety, helped the jury to value the Fishers' pore space. The district court engaged in "sound and just trial practice" in liberally admitting these contracts so that each party could "present its argument of fair market value." *428.02 Acres*, 687 F.2d at 270–71 (cleaned up).

Continental correctly observes that many of the per-barrel payments in these contracts compensated landowners for more than just the use of pore space. But we believe the jury could understand this distinction. Most of the North Dakota contracts reflected a payment of $0.10 per barrel—twice the amount the jury awarded the Fishers. By contrast, many of the Continental contracts broke down payments into a lump sum covering both the acreage and damages and a $0.06 per barrel royalty. Some contracts even included a separate payment for an access road or a pipeline. Continental presented testimony that the $0.06 per barrel royalties and the lump sum payments together were intended to cover all damages and that there was no separate payment for the use of pore space. But the contracts speak for themselves. They detail the rights being conveyed. Neither the court nor the jury was required to credit Continental's interpretation of the contracts. Regardless, the jury's award of $0.05 per barrel to the Fishers, instead of the apparent prevailing rates of $0.06 per barrel from the Continental contracts or $0.10 per barrel from the North Dakota contracts, suggests that the jury understood that these contracts reflected compensation for rights not at issue in this case. It appears that the jury, rather than being confused by the contracts, properly weighed them as reflecting comparable, but not identical, circumstances. The district court did not abuse its discretion in admitting the Continental and North Dakota contracts.

### 3. *Motion for a New Trial*

Continental also argues, in the alternative, that it is entitled to a new trial. "We review the denial of a motion for a new trial for a 'clear' abuse of discretion, with the key question being whether a new trial is necessary to prevent a miscarriage of justice." *Petrone v. Werner Enters., Inc.*, 42 F.4th 962, 968 (8th Cir. 2022) (quoting *Hallmark Cards, Inc. v. Murley*, 703 F.3d 456, 462 (8th Cir. 2013)). As decided above, the district court did not abuse its discretion in admitting the evidence of damages, and the evidence was sufficient to support the jury's verdict. Under these circumstances, the court did not abuse its discretion in denying Continental's motion for a new trial.

C. *Attorneys' Fees and Costs*

"We review de novo the legal issues related to an award of attorneys' fees, while the actual award is reviewed for an abuse of discretion." *Snider v. City of Cape Girardeau*, 752 F.3d 1149, 1159 (8th Cir. 2014). North Dakota law governs the award of attorneys' fees. *See ResCap Liquidating Tr. v. Primary Residential Mortg., Inc.*, 59 F.4th 905, 921–22 (8th Cir. 2023); *Grabinski v. Blue Springs Ford Sales, Inc.*, 203 F.3d 1024, 1027 (8th Cir. 2000).

Under North Dakota law, in a landowner's action to recover compensation from a mineral developer, a prevailing landowner is entitled to attorneys' fees and costs if the landowner is awarded compensation greater than that offered by the developer before the landowner sued. N.D. Cent. Code § 38–11.1–09. Because Continental never offered compensation and because the Fishers prevailed at trial and were awarded damages, the Fishers are entitled to an award of attorneys' fees and costs. On appeal, Continental challenges the amount of that award, raising three issues.

D. *The Lodestar*

Continental first argues that the district court erred in not calculating the lodestar. This argument fails for two reasons. First, although the North Dakota Supreme Court has approved use of the lodestar method, it has also approved use of an itemized bill and affidavit. *Johnson v. Menard, Inc.*, 955 N.W.2d 27, 33 (N.D. 2021). Applying North Dakota law, the district court was free to use the itemized bill and affidavit that the Fishers' counsel submitted.

Second, Continental itself invited the district court to apply an across-the board-reduction. "An erroneous ruling generally does not constitute reversible error when it is invited by the same party who seeks on appeal to have the ruling overturned." *Roth v. Homestake Mining Co. of Cal.*, 74 F.3d 843, 845 (8th Cir. 1996). In response to the Fishers' motion for an award of attorneys' fees, Continental asked the court to exclude recovery for work Continental considered duplicative, redundant, or excessive. After listing the entries for some of this work, Continental

posed an alternative to exclusion: the court could simply "apply an 'across-the-board' reduction of the Fishers' counsel's claimed hours by at least 50 [percent]." R. Doc. 206, at 4. The district court did exactly what Continental suggested, except it chose a different percentage. Continental cannot complain that the district court failed to calculate the lodestar when the court used the very calculation method Continental suggested.

### E. *Reasonableness of the Fee Award*

Continental also argues that the district court abused its discretion in awarding attorneys' fees with a greater than 10:1 ratio to the damages award. In Continental's view, the court should not have credited the Fishers with success for winning the ability to bring future claims, as the court disallowed their present claim for future damages. Furthermore, Continental argues that the court's percentage reduction for lack of overall success was arbitrary and inadequate because the Fishers ultimately obtained less than one percent of the amount they initially sought in damages.

The North Dakota Supreme Court has said:

> An award of attorney's fees is within the district court's discretion and will only be disturbed on appeal if the district court abuses its discretion. A court abuses its discretion if it acts in an arbitrary, unreasonable, or unconscionable manner, its decision is not the product of a rational mental process leading to a reasoned decision, or if it misinterprets or misapplies the law.

*Johnson*, 955 N.W.2d at 33 (cleaned up). Eight factors guide courts in determining a reasonable fee award under North Dakota law:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent.

*Big Pines, LLC v. Baker*, 958 N.W.2d 480, 486 (N.D. 2021) (quoting N.D. R. Prof'l Conduct 1.5(a)).

As Continental points out, we have said that "the most critical factor is the degree of success obtained." *Galloway v. Kan. City Landsmen, LLC*, 833 F.3d 969, 975 (8th Cir. 2016) (quoting *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983)) (affirming an award of attorneys' fees under 28 U.S.C. § 1712). But under North Dakota law, which applies here, "all factors must be considered, and no single factor controls." *Heng v. Rotech Med. Corp.*, 720 N.W.2d 54, 65 (N.D. 2006). Although North Dakota courts must consider each factor,[6] "a district court is not required to describe its calculations in detail when awarding attorney's fees so long as [the appellate court] can discern a basis for the award." *Big Pines*, 958 N.W.2d at 487.

Upon review, we conclude that the district court properly considered the Fishers' degree of success. The court applied a 25-percent reduction for lack of success to fees incurred prior to November 29, 2021, the date the court ruled that the Fishers' claim for future damages was too speculative. On that date, the court also

---

[6]Continental does not suggest that the district court failed to consider the remaining factors.

noted that only about one-third of the wellbore lay in the Fishers' pore space and ruled that the Fishers could only recover for the injected saltwater that occupied their pore space. Prior to that date, the court had also dismissed "[a]ny claim by the Fishers that Continental has failed to reasonably accommodate uses of their property." *Fisher*, 2021 WL 665102, at *7. The court tempered its reduction because the Fishers won on the issue of liability and protected their right to bring future claims. The court also determined that the Fishers spent little time arguing that Continental's use was unreasonable or seeking compensation for the remaining two-thirds of injections.

Continental focuses on the difference between the amount the Fishers sought and the amount they obtained, but the difference between what Continental offered (nothing) and the amount the Fishers obtained is also relevant. In *City of Medora v. Golberg*, 569 N.W.2d 257 (N.D. 1997), the North Dakota Supreme Court held that a court abused its discretion in focusing only on the amount of the jury's condemnation award and overlooking the difference between that award and what the city had initially paid. *Id.* at 261. Here, Continental originally claimed it had no liability, a claim the district court rejected. Under *Golberg*, this was a relevant fact in considering the Fishers' degree of success. The court did not abuse its discretion in applying a 25-percent reduction to the Fishers' attorneys' fees incurred prior to November 29.

The district court declined to reduce, for lack of success, the fees incurred after November 29. The court noted that the issues decided contrary to the Fishers had all been resolved by that date. The Fishers won on liability and obtained a damages award. The Fishers sought $0.10 per barrel but were awarded $0.05 per barrel. Thus, they obtained 50 percent of the damages they sought at trial. Because degree of success is only one of eight factors to consider in determining a reasonable fee award, and because district courts have considerable discretion in calculating awards, the district court was not required to reduce the post-November 29 fee award for lack of success.

Furthermore, the district court's calculation resulted in a permissible ratio of attorneys' fees to damages. The North Dakota Supreme Court has approved ratios between 5:1 and 6:1. *See Big Pines*, 958 N.W.2d at 483, 487; *Heng*, 720 N.W.2d at 58, 65. Considering the absence of any authority setting a ceiling for ratios, as well as the North Dakota Supreme Court's preference for a comprehensive treatment of the factors, we decline to overturn the fee award here merely because the ratio is high.

Continental also takes issue with the district court's "minimal explanation" for its fee award. Appellant's Br. at 39. Though not at length, the district court gave reasons for its award. It noted that some of Continental's arguments lacked cogency or were precluded by the court's orders in *Fisher I*. This explanation was adequate. *See Big Pines*, 958 N.W.2d at 487.

Continental also argues that the court should not have credited the Fishers with winning the right to bring future actions. The district court, however, noted that Continental initiated the present action, seeking a declaratory judgment that the Fishers were not entitled to anything now or in the future. The court did not abuse its discretion in considering its order regarding future damages to be more of a success for the Fishers than a defeat.

We hold that the court did not abuse its discretion in awarding the Fishers $249,243.60 in attorneys' fees.

F. *Expert Witness Fees*

Continental also argues that the court should not have awarded the Fishers fees for their expert witness Gary Hughes because Hughes's work was unnecessary. Continental does not argue that federal law and its attendant limit on expert witness fees apply. *See* 28 U.S.C. § 1821(b) (setting witness fees at $40 per day). Thus, we will assume without deciding that North Dakota law applies to an award of expert witness fees. *See Bright v. Land O'Lakes, Inc.*, 844 F.2d 436, 443–44 (7th Cir. 1988) (holding, in a diversity case, that expert witness fees were recoverable under a state

statute). *But see Humann v. KEM Elec. Coop., Inc.*, 497 F.3d 810, 811, 813 (8th Cir. 2007) (indicating that the Federal Rules of Civil Procedure govern a federal court's award of costs in an action combining state and federal claims).

As noted, North Dakota law allows for an award of costs on these facts. N.D. Cent. Code § 38–11.1–09. It provides for recovery of reasonable expert witness fees, but the amount of the fees and the number of expert witnesses for whom a party can recover are "in the sole discretion of the trial court." N.D. Cent. Code § 28–26–06(5). The "court has discretion in determining which expert witnesses are necessary at trial and the amount of expert witness fees." *Cass Cnty. Joint Water Res. Dist. v. Erickson*, 918 N.W.2d 371, 381 (N.D. 2018).

The district court determined that the Fishers were entitled to 90 percent of the fees for Hughes's work. Continental argues that Hughes's work was unnecessarily contextual. But in a case addressing an esoteric subject, like pore space a mile and a half beneath the earth's surface, contextual development is beneficial to the trier of fact. And at trial, Hughes testified about the varying porosity of subsurface rock formations, which likely helped the jury understand and value the Fishers' pore space. The district court was in the best position to judge how much context was necessary. We will not second guess its judgment that Hughes's work was necessary for the Fishers to develop and explain their claim. We therefore affirm the award of costs.

### III. *Conclusion*

Sufficient evidence supports the jury's verdict. Furthermore, the district court did not abuse its discretion in admitting Rick Fisher's testimony and the third-party contracts. And finally, the district court did not abuse its discretion in awarding attorneys' fees and costs. Therefore, we affirm.

_____