Jensen, Justice.
 

 *60
 
 [¶ 1] Robert Post Johnson and A.V.M., Inc. ("Johnson and A.V.M.") appeal from a judgment entered after the district court granted summary judgment in favor of Statoil Oil & Gas LP and others ("Statoil"). Johnson and A.V.M. assert the district court incorrectly determined the primary three-year terms of two oil and gas leases were extended by continuous drilling operations clauses within the lease agreements. We reverse.
 

 I
 

 [¶ 2] In April 2008, Johnson and A.V.M. entered into separate oil and gas leases with Missouri Basin Well Service. The leases collectively apply to mineral interests in and under land comprised of eight units. Unless otherwise extended, the primary three-year term of each lease expired in April 2011.
 

 [¶ 3] The two leases contain identical habendum, continuous drilling operations, and Pugh clauses. The habendum and continuous drilling operations clauses are part of a form oil and gas lease. The Pugh clauses were added by the parties to the form leases.
 

 [¶ 4] The habendum clauses read as follows:
 

 It is agreed that this lease shall remain in force for a term of three (3) years from this date and as long thereafter as oil or gas of whatsoever nature or kind is produced from said leased premises or on acreage pooled therewith, or drilling operations are continued as hereinafter provided.
 

 The continuous drilling operations clauses read as follows:
 

 If, at the expiration of the primary term of this lease, oil or gas is not being produced on the leased premises or on acreage pooled therewith but Lessee is then engaged in drilling or reworking operations thereon, then this lease shall continue in force so long as operations are being continuously prosecuted on the leased premises or on acreage pooled therewith, and operations shall be considered to be continuously prosecuted if not more than ninety (90) days shall elapse between the completion or abandonment of one well and the beginning of operations for the drilling of a subsequent well. ... If oil or gas shall be discovered and produced as a result of such operations at or after the expiration of the primary term of this lease, this lease shall continue in force so long as oil or gas is produced from the leased premises or on acreage pooled therewith.
 

 The Pugh clauses read as follows:
 

 Notwithstanding anything to the contrary, on expiration of the primary term of the lease, the lease shall terminate as
 
 *61
 
 to any part of the property not included within a well unit or units, as established by appropriate regulating authority, from which oil or gas is being produced in paying quantities and shall also terminate as to 100' below geologic strata or formations from which production has not occurred during the primary term.
 

 [¶ 5] The parties agree that at the end of the primary three-year lease term production was occurring with regard to three of the eight units ("undisputed units"). Their controversy involves the remaining five units ("disputed units"). Johnson and A.V.M. argue the Pugh clauses terminated the leases with regard to the disputed units at the end of the primary three-year term because oil or gas was not being produced in "paying quantities." Statoil contends the leases were extended for both the undisputed and disputed units by drilling operations occurring at the end of the primary lease periods and as provided by the continuous drilling operations clauses.
 

 II
 

 [¶ 6] This Court's standard for reviewing a district court's decision granting summary judgment under N.D.R.Civ.P. 56 is well established:
 

 Summary judgment is a procedural device for the prompt resolution of a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. A party moving for summary judgment has the burden of showing there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. ... Whether the district court properly granted summary judgment is a question of law which we review de novo on the entire record.
 

 Estate of Christeson v. Gilstad
 
 ,
 
 2013 ND 50
 
 , ¶ 6,
 
 829 N.W.2d 453
 
 .
 

 [¶ 7] The same general rules that govern interpretation of a contract apply to oil and gas leases.
 
 Johnson v. Mineral Estate, Inc.
 
 ,
 
 343 N.W.2d 778
 
 , 780 (N.D. 1984). The construction of a written contract to determine its legal effect is a question of law and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation.
 
 West v. Alpar Res., Inc.
 
 ,
 
 298 N.W.2d 484
 
 , 490 (N.D. 1980).
 

 [¶ 8] Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning.
 
 Grynberg v. Dome Petroleum Corp.
 
 ,
 
 1999 ND 167
 
 , ¶ 10,
 
 599 N.W.2d 261
 
 . A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the parties' true intent.
 
 Miller v. Schwartz
 
 ,
 
 354 N.W.2d 685
 
 , 688 (N.D. 1984).
 

 [¶ 9] "The general rule is an oil and gas lease is indivisible by its nature."
 
 Egeland v. Cont'l Res., Inc.
 
 ,
 
 2000 ND 169
 
 , ¶ 16,
 
 616 N.W.2d 861
 
 . "Ordinarily, production from, or other operations on, any part of the land included in an oil and gas lease will perpetuate the lease beyond the primary term as to all of the land covered by the lease."
 
 Id
 
 . This can lead to an unwanted outcome for landowners-the entirety of the lease being held by minimal production. Joshua A. Swanson,
 
 The Fine Print Matters: Negotiating an Oil and Gas Lease in North Dakota
 
 ,
 
 87 N.D.L. Rev. 703
 
 , 713 (2011). To prevent dilution of their interest, landowners often include a Pugh clause which severs the lease from units where drilling operations or production are
 
 *62
 
 not occurring.
 
 Id
 
 . at 712-13. To make a lease divisible, the Pugh clause must be clear and explicit.
 
 Egeland
 
 , at ¶ 17. "A Pugh clause cannot arise by implication."
 
 Id
 
 .
 

 [¶ 10] For both of the leases at issue, the parties used a form lease which contained the habendum and continuous drilling operations clauses. The parties added a Pugh clause to both of the form leases. The Pugh clauses are unambiguous, and provide that at the end of the primary three-year lease term, "[n]otwithstanding anything to the contrary," the leases terminate with respect to land not within a "well unit or units ... from which oil or gas is being produced in paying quantities...." The parties do not dispute that oil and gas is not being produced in paying quantities as to the disputed units.
 

 III
 

 [¶ 11] Statoil contends that although the Pugh clauses limit the extension of the leases with regard to the non-producing units, in harmonizing all of the provisions, the leases are extended to the non-producing units because of drilling operations occurring as provided in the habendum and continuous drilling clauses.
 

 [¶ 12] "Because Pugh clauses vary widely in form, the interpretation of how a Pugh clause may affect other provisions in a lease may also vary."
 
 Tank v. Citation Oil & Gas Corp.
 
 ,
 
 2014 ND 123
 
 , ¶ 32,
 
 848 N.W.2d 691
 
 . Statoil relies upon our prior decision interpreting a Pugh clause in
 
 Egeland
 
 to support extension of the leases beyond the primary three-year period.
 
 2000 ND 169
 
 ,
 
 616 N.W.2d 861
 
 . However, the language of the Pugh clauses in this case is significantly different from what this Court encountered in
 
 Egeland
 
 .
 

 [¶ 13] The Pugh clause in
 
 Egeland
 
 was silent to operations and applied only to define the land which would be subject to a lease extension and not the method of extension.
 
 Egeland
 
 ,
 
 2000 ND 169
 
 , ¶ 27,
 
 616 N.W.2d 861
 
 . Because the Pugh clause was silent to the method of extension, no conflict existed regarding the Pugh clause's interaction with the habendum and continuous drilling operations clauses of the lease.
 

 Id.
 

 [¶ 14] Like the
 
 Egeland
 
 case, the Pugh clauses here are silent as to drilling operations. However, unlike
 
 Egeland,
 
 the Pugh clauses also include an express limitation on the method that may be used to extend the leases. The Pugh clauses in this case state the lease will terminate at the expiration of the primary term for any part of the property not included within a well unit from which oil or gas is being produced in paying quantities. The habendum and continuous drilling operations clauses contradict the Pugh clause and reference both production and drilling as methods for extension of the leases. The Pugh clauses further provide that they apply "[n]otwithstanding anything to the contrary" within the leases. Unlike
 
 Egeland
 
 , we conclude the Pugh clauses in this case define both the land subject to an extension and the method of the extension.
 

 [¶ 15] Statoil also relies upon
 
 Tank
 
 to support its position that a Pugh clause must explicitly address continuous drilling operations in order to prevent extension of a lease via the habendum and continuous operations clauses. However, Statoil's reliance is misplaced. Unlike
 
 Egeland
 
 and this case, the
 
 Tank
 
 Pugh clause addressed continuous drilling operations, and stated the lease "shall expire as to said lands not included in producing units at the end of [a] one-year period during which no drilling operations were conducted."
 
 Tank
 
 ,
 
 2014 ND 123
 
 , ¶ 15,
 
 848 N.W.2d 691
 
 . The dispute in
 
 Tank
 
 concerned whether the Pugh clause or continuous operations
 
 *63
 
 clause controlled.
 
 Id.
 
 at ¶ 27. Ultimately, we construed the lease to give effect to both clauses, with the Pugh clause controlling where there was conflict.
 
 Id.
 
 at ¶ 28. Nowhere in
 
 Tank
 
 does this Court suggest a Pugh clause must say the magic words "drilling operations" in order to prevail over a continuing operations clause-rather, as our caselaw makes clear, Pugh clauses require an individualized interpretation.
 

 [¶ 16] The Pugh clauses in this case limit the extension of the leases to land that is within a unit or units where oil and gas production exits in paying quantities. The continuous drilling operations clauses and the habendum clauses include both production and drilling as methods for extension of the leases. We conclude the provisions are irreconcilable and cannot be harmonized.
 

 IV
 

 [¶ 17] Having concluded the Pugh clauses conflict with the continuous drilling operations clauses, we are required to determine which of the clauses governs the application of the leases to the disputed units at the end of the primary three-year periods. Section 9-07-16, N.D.C.C., provides the parts of the contract that are purely original control those parts which are copied from a form. In this case, the Pugh clauses were added by the parties to existing lease forms. The habendum and continuous drilling clauses were part of the form contracts. Section 9-07-16, N.D.C.C., compels the application of the Pugh clauses over the habendum and continuous drilling operations clauses. Because the Pugh clauses are controlling, the method for extending the leases was limited to land within a unit or units where there was oil and gas production in paying quantities. As such, the leases could not be extended in regard to the disputed units by drilling operations as provided in the habendum and continuous drilling operations clauses. Therefore, the district court's determination that the leases could be extended by drilling was not correct.
 

 V
 

 [¶ 18] We conclude the Pugh clauses are irreconcilable with the habendum and continuous drilling operations clauses, and the Pugh clauses control. The Pugh clauses terminated the leases with regard to the disputed units at the end of the primary three-year period because of the lack of oil or gas production in paying quantities within those units. We therefore reverse the judgment of the district court.
 

 [¶ 19] Jon J. Jensen
 

 Lisa Fair McEvers
 

 Daniel J. Crothers
 

 Jerod E. Tufte
 

 VandeWalle, Chief Justice, concurring specially.
 

 [¶ 20] I concur in the result reached by the majority in this case. I do so with the understanding that the Pugh clauses in this case apply only at the end of the primary term of the leases to supercede the habendum and continuous drilling operations clauses. If the lease is extended beyond the primary term by production, the Pugh clauses are no longer effective and the habendum and continuous drilling operations clauses would prevail if production were to cease after that time.
 

 [¶ 21] Gerald W. VandeWalle, C.J.