# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2020 ND 182

Woodrock, Inc.                                                    Plaintiff and Appellant

　　　and

Bakken Aggregates, LLC,                                                    Plaintiff

　　　v.

McKenzie County, North Dakota,                          Defendant and Appellee

## No. 20200066

Appeal from the District Court of McKenzie County, Northwest Judicial District, the Honorable Robin A. Schmidt, Judge.

AFFIRMED.

Opinion of the Court by McEvers, Justice.

Thomas R. Olson, West Saint Paul, MN, for plaintiff and appellant Woodrock, Inc.

Brian D. Schmidt (argued) and Scott K. Porsborg (on brief), Bismarck, ND, for defendant and appellee.

**McEvers, Justice.**

[¶1] Woodrock, Inc. appeals from a summary judgment dismissing its negligence and other claims against McKenzie County. Woodrock argues the district court erred in concluding a project to stockpile aggregate materials was not a public improvement and the bond requirement under N.D.C.C. § 48-01.2-10 did not apply. We conclude supplying aggregate materials to stockpiles for general use in maintaining and repairing county roads does not constitute "construction of a public improvement." We therefore conclude the district court did not err in concluding N.D.C.C. § 48-01.2-10 does not apply and the County was not required to obtain a bond. We affirm.

I

[¶2] In September 2018, Woodrock sued the County for violations of N.D.C.C. ch. 48-01.2 and negligence. Woodrock alleged the County hired Edwards Gravel & Trucking, LLC to supply aggregate to aggregate stockpiles, the County did not obtain a payment bond from Edwards Gravel, Woodrock furnished materials for use in the project, and Edwards Gravel did not pay Woodrock for the materials. Woodrock claimed that the County violated N.D.C.C. § 48-01.2-10 and was negligent by failing to obtain a bond from Edwards Gravel and that the County is liable to the subcontractors and material suppliers who worked on the project. Woodrock requested damages in the amount of $298,629.54.

[¶3] The County moved for summary judgment, arguing N.D.C.C. § 48-01.2-10 does not apply because the project is not a "public improvement" as defined by statute, there is no private right of action for failure to obtain a bond under N.D.C.C. § 48-01.2-10, and the negligence claim fails as a matter of law because the County did not owe a duty of care to Woodrock. Woodrock also moved for summary judgment, arguing N.D.C.C. § 48-01.2-10 applies to the aggregate stockpile project, the legislature intended suppliers would have a private cause

of action against a governing body who failed to take a bond as required by statute, and the County is liable for its negligence.

[¶4]  The district court granted the County's motion and entered summary judgment in its favor. The court concluded there were two issues: 1) whether the project was a public improvement project as defined in N.D.C.C. ch. 48-01.2; and 2) if the project was a public improvement project, was the County legally responsible for failing to obtain a bond. The court held it was undisputed the project was to supply aggregate to stockpiles of aggregate materials used for county road maintenance and repair, the contract was awarded to Edwards Gravel, the County did not obtain a payment bond, the County paid Edwards Gravel in full, and Edwards Gravel did not pay Woodrock. The court interpreted the statutory definition of "public improvement" and concluded the stockpiling aggregate for maintenance of county roads was not a public improvement as defined in N.D.C.C. ch. 48-01.2, county road maintenance is specifically excluded from the definition of a public improvement, and no bond was required under N.D.C.C. § 48-01.2-10.

II

[¶5]  Woodrock contends the district court erred in granting summary judgment in favor of the County. Woodrock argues the aggregate stockpile project was a "public improvement project" as defined in N.D.C.C. ch. 48-01.2, N.D.C.C. § 48-01.2-10 applies, and the County violated the statute by failing to obtain a bond from Edwards Gravel before the work started.

[¶6]  Our standard for reviewing a district court's summary judgment is well established:

> Summary judgment is a procedural device under N.D.R.Civ.P. 56(c) for promptly resolving a controversy on the merits without a trial if there are no genuine issues of material fact or inferences that can reasonably be drawn from undisputed facts, or if the only issues to be resolved are questions of law. The party seeking summary judgment must demonstrate there are no genuine issues of material fact and the case is appropriate for judgment as a matter of law. In deciding whether the district court

2

appropriately granted summary judgment, we view the evidence in the light most favorable to the opposing party, giving that party the benefit of all favorable inferences which can reasonably be drawn from the record. A party opposing a motion for summary judgment cannot simply rely on the pleadings or on unsupported conclusory allegations. . . . When reasonable persons can reach only one conclusion from the evidence, a question of fact may become a matter of law for the court to decide. A district court's decision on summary judgment is a question of law that we review de novo on the record.

*Wachter Dev., Inc. v. Martin*, 2019 ND 202, ¶ 8, 931 N.W.2d 698 (quoting *Frontier Fiscal Servs., LLC v. Pinky's Aggregates, Inc.*, 2019 ND 147, ¶ 6, 928 N.W.2d 449). The interpretation of a statute is a question of law, which is fully reviewable on appeal. *Hughes v. Olheiser Masonry, Inc.*, 2019 ND 273, ¶ 8, 935 N.W.2d 530.

[¶7] We seek to ascertain the legislature's intent when we interpret a statute. *Rocky Mountain Steel Founds., Inc. v. Brockett Co., LLC*, 2019 ND 252, ¶ 11, 934 N.W.2d 531. Words are given their plain, ordinary, and commonly understood meaning, unless they are specifically defined or contrary intention plainly appears. N.D.C.C. § 1-02-02. A statute is ambiguous if it is subject to different, but rational meanings. *Rocky Mountain Steel*, at ¶ 11.

[¶8] Section 48-01.2-10, N.D.C.C., governs bonds from contractors for public improvements. When this action commenced the statute provided:

Unless otherwise provided under this chapter, a governing body authorized to enter a contract for the construction of a public improvement in excess of one hundred fifty thousand dollars shall take from the contractor a bond before permitting any work to be done on the contract. The bond must be for an amount equal at least to the price stated in the contract. The bond must be conditioned to be void if the contractor and all subcontractors fully perform all terms, conditions, and provisions of the contract and pay all bills or claims on account of labor performed and any supplies, and materials furnished and used in the performance of the contract, including all demands of subcontractors. . . . The bond is security for all bills, claims, and demands until fully paid, with

3

preference to labor and material supplies as to payment. The bond must run to the governing body, but any person having a lawful claim against the contractor or any subcontractor may sue on the bond.

N.D.C.C. § 48-01.2-10(1) (2017).

[¶9] Undisputed evidence established that the County maintains stockpiles of aggregate material for the purpose of repairing and maintaining roads and that the County requested bids for 100,000 tons of Class 13 Modified aggregate material for the County Road Department for two aggregate stockpiles. The County prepared standard specifications to inform potential bidders of the requirements for the project. The stockpile specifications stated, "The Project consists of furnishing all labor, materials, and equipment to perform the hauling and stockpiling of 100,000 total tons of Class 13 Modified that will be divided between two (2) sites." Edwards Gravel submitted a bid for the project for $1,435,750. The district court concluded it was undisputed the project was to supply aggregate for two aggregate material stockpiles to be used on county road maintenance and repairs.

[¶10] The plain language of N.D.C.C. § 48-01.2-10 requires the governing body to take a bond before permitting any work to be done on a contract for the "construction of a public improvement" in excess of $150,000. "Construction" is defined as "the process of building, altering, repairing, improving, or demolishing any public structure or building or other improvement to any public property." N.D.C.C. § 48-01.2-01(4) (2017). A "public improvement" for purposes of N.D.C.C. ch. 48-01.2 is:

> [A]ny improvement undertaken by a governing body for the good of the public and which is paid for with any public funds . . . and is constructed on public land or within an existing or new public building or any other public infrastructure or facility if the result of the improvement will be operated and maintained by the governing body. The term does not include a county road construction and maintenance, state highway, or public service commission project governed by title 11, 24, or 38.

N.D.C.C. § 48-01.2-01(21) (2017).

4

[¶11] The word "improvement" is not specifically defined in N.D.C.C. ch. 48-01.2. This Court previously noted the common definition of "improvement" as it relates to real property is, "a change or addition to land or real property, as a sewer, fence, etc., to make it more valuable." *See Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 736 (N.D. 1988) (quoting *Webster's New World Dictionary* (2d College Ed. 1980)). *See also* Improvement, *Black's Law Dictionary* 907 (11th ed. 2019) (defining improvement as "[a]n addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance.").

[¶12] We conclude supplying materials to a stockpile for use in future projects does not constitute "the construction of a public improvement" as defined in N.D.C.C. ch. 48-01.2. Supplying materials to a stockpile for use in some unspecified future project does not meet the statutory definition of construction because it is not a process of building, altering, repairing, improving, or demolishing a public structure or building or other improvement. It also does not meet the statutory definition of a public improvement because it does not constitute an improvement. It is something that has value, but it is not an addition to property that increases its value or utility or enhances its appearance. Our decision is consistent with the conclusion other courts have reached in cases with similar facts. *See Rogers v. Nez Perce County*, 364 P.2d 1049, 1050 (Idaho 1961) (holding bond was not required when the county hired a contractor to crush and deliver gravel to be stockpiled for repair and construction of public roads because the contract was not for the construction, alteration, or repair of a public work); *Knuth v. Fid. & Cas. Co. of N.Y.*, 83 N.W.2d 126, 130 (Wis. 1957) (holding a contract to furnish sand and gravel was not a contract for a public improvement because it was not directly related to any public improvement and merely called for the sale of delivery of a commodity not earmarked for use on any particular project).

[¶13] The South Dakota Supreme Court reached a similar result in *Pete Lien & Sons, Inc. v. City of Pierre*, 1998 S.D. 38, 577 N.W.2d 330 (per curiam). The City solicited bids for the supply of gravel to a city stockpile used for general road maintenance purposes, and a subcontractor sued the City after the contractor failed to pay for the gravel the subcontractor supplied. *Id.* at ¶¶ 2-

3. Section 5-21-1, S.D. Codified Laws, directed the City to require surety from a contractor furnishing materials for the construction or repair of a public improvement. *Pete Lien*, at ¶ 6. The subcontractor argued the City should have required a surety from the contractor because the contract was to furnish materials for the repair of a public improvement. *Id.* The court concluded the statute specifically defined "public improvement" but did not define "improvement," and an improvement is ordinarily defined as a permanent addition or betterment of real property that enhances its value and involves the expenditure of labor or money and is designed to make the property more useful or valuable. *Id.* at ¶¶ 8-9. The court held a pile of gravel does not fall within the definition of an improvement, particularly when the material is furnished for a general stockpile and not for a particular road improvement project. *Id.* at ¶ 9. The court held that "a gravel stockpile itself does nothing to make property more useful or valuable." *Id.* We agree, a general stockpile of materials that are not for use in a particular project does not meet the definition of an improvement.

[¶14] Moreover, the definition of "public improvement" under N.D.C.C. § 48-01.2-01(21) unambiguously excludes a county road construction and maintenance project. Woodrock argues the exception for projects to repair or maintain county roads does not apply, because the project only involved constructing a stockpile of the materials and did not involve the construction or maintenance of a county road. Although the project to acquire the aggregate materials itself may not have involved actual road maintenance or construction, it involved stockpiling materials used to repair and maintain the county roads. The project was completed for the purpose of repairing and maintaining the county roads.

[¶15] The project was not for the construction of a public improvement as defined by N.D.C.C. § 48-01.2-01(4) and (21), and therefore the statutory bond requirement for public improvements under N.D.C.C. § 48-01.2-10 did not apply. We conclude the district court did not err in granting summary judgment and dismissing Woodrock's claims against the County.

6

[¶16]   We affirm the judgment.

[¶17]   Lisa Fair McEvers
        Daniel J. Crothers
        Jerod E. Tufte
        Gerald W. VandeWalle
        Jon J. Jensen, C.J.