# IN THE SUPREME COURT
# STATE OF NORTH DAKOTA

## 2025 ND 131

| | |
|---|---|
| John and Stacy Bang, | Plaintiffs and Appellants |
| v. | |
| Continental Resources, Inc., | Defendant and Appellee |
| | |
| and | |
| | |
| Continental Resources, Inc., | Plaintiff and Appellee |
| v. | |
| John E. Bang, | Defendant and Appellant |

## No. 20240239

Appeal from the District Court of Dunn County, Southwest Judicial District, the Honorable Dann E. Greenwood, Judge.

AFFIRMED.

Opinion of the Court by Bahr, Justice.

Zachary E. Pelham (argued) and Kirsten H. Tuntland (on brief), Bismarck, ND for appellants.

Matt W. Sherwood (argued), Amarillo, TX, and Spencer D. Ptacek (appeared) and Lawrence Bender (on brief), Bismarck, ND, for appellee.

**Bahr, Justice.**

[¶1]   John and Stacy Bang appeal from a district court's amended judgment entered after the court granted Continental Resources's partial summary judgment, a jury awarded damages to the Bangs, and the court awarded costs to Continental. The Bangs also appeal from an order denying their motion for a new trial under N.D.R.Civ.P. 59 and alternate motion for relief under N.D.R.Civ.P. 60. We affirm the amended judgment and order denying a new trial.

I

[¶2]   The Bangs own several parcels of real property in Dunn County, including the subject property in this dispute. The Bangs own the surface and mineral estate. In May 2004, John Bang executed an oil and gas lease agreement with Diamond Resources, Inc. Continental, Diamond Resources's successor, is the spacing unit operator and holds the mineral lease for the mineral estate. Continental notified the Bangs of its intent to install oil and gas facilities on the subject property. Continental subsequently constructed on the subject property a saltwater pipeline, two well pads, flowlines, electrical and fiber optic lines, and associated facilities. The Bangs objected to Continental's installation of the facilities.

[¶3]   In 2022, the Bangs commenced this action against Continental alleging claims for trespass, for an injunction, and for oil and gas production damages under N.D.C.C. ch. 38-11.1. The district court denied the Bangs' motions for temporary restraining order and for preliminary injunction. Continental commenced a separate action against John Bang. In its complaint, Continental sought judgment declaring Continental has a right to make reasonably necessary use of surface lands within a subject spacing unit, including the subject property, to include installation of a pipeline facility; and for an injunction to prohibit interference with Continental's operations. The court consolidated the two cases.

[¶4]   In January 2024, the district court granted Continental partial summary judgment. In its order, the court declared Continental has the right to install a

1

pipeline corridor and granted a permanent injunction; denied the Bangs' claims for trespass and permanent injunction; and denied Continental summary judgment on damages. Before trial, the parties filed motions in limine. The court entered an order disposing of the parties' motions.

[¶5] In February 2024, the district court held a jury trial on the Bangs' remaining damage claims under N.D.C.C. ch. 38-11.1. The jury returned a verdict awarding the Bangs $97,621.90 for their compensation claims under N.D.C.C. ch. 38-11.1. The Bangs moved for a new trial and for other relief, which Continental opposed. The court denied the Bangs' motions. The Bangs appealed. This Court temporarily remanded for the court to enter an amended judgment addressing its decision on Continental's motion under N.D.R.Civ.P. 50. The court entered its amended final judgment.

II

[¶6] Throughout their principal brief before this Court, the Bangs attempt to incorporate by reference arguments made before the district court. For example, when addressing whether the court erred by excluding evidence and testimony regarding settlement agreements, the Bangs write, "This issue was also briefed pre-trial and Bang incorporates the previously made arguments here." When addressing whether the court should have included topsoil as an improvement, the Bangs write, "Bang's response [to Continental's summary judgment motion] is incorporated here by reference." The Bangs' argument the court should have granted their motions under N.D.R.Civ.P. 59 and 60 consists of two sentences:

> Bang reincorporates arguments already asserted in this brief, as well as in the briefs asserting justification for a new trial, here. The denial of Bang's Rule 59 and 60 motions was error for the reasons presented by Bang and this Court should reverse the district court and order a new trial.

(Record citations omitted.) Similarly, when arguing this Court should reverse the court's decisions regarding costs, the Bangs twice attempt to incorporate by reference arguments made to the district court. They write, "Bang incorporates by reference arguments made in his motion to the district court seeking costs and

2

disbursements." They also write, "The district court erred in determining Continental was entitled to costs under Rule 68. For the reasons argued by Bang, which are incorporated here by reference, Continental's qualified Rule 68 offer precludes Continental from recovering costs." (Record citations omitted.)

[¶7]  "We have disapproved the practice of incorporating by reference in an appellate brief arguments previously presented to the district court." *Daniels v. Ziegler*, 2013 ND 157, ¶ 13, 835 N.W.2d 852. As stated in *Minto Grain, LLC v. Tibert*, 2009 ND 213, ¶ 27, 776 N.W.2d 549, "Our rules do not encourage and condone parties relying extensively on arguments 'incorporated by reference' or attempting to make 'alternate motions' in footnotes." The North Dakota Rules of Appellate Procedure establish requirements for briefs. Rule 28(b)(7) requires the argument in an appellant's brief contain, among other things, "appellant's contentions and the reasons for them, with citations to the authorities and parts of the record on which the appellant relies[.]" A statement incorporating arguments by reference does not meet the requirements of Rule 28(b)(7). The North Dakota Rules of Appellate Procedure also establish page limitations on appellate briefs. N.D.R.App.P. 32(a)(8). A party may not circumvent page limitations by incorporating arguments made in pleadings before the district court. Moreover, judges "are not ferrets" and should not be required to search briefs before other courts to discern a party's argument. *Minto Grain,* ¶ 27. In *Daniels*, ¶ 13, when a party incorporated by reference arguments submitted to the district court, this Court concluded the issues were inadequately briefed for its consideration and declined to address them.

[¶8]  This Court will not consider the Bangs' district court arguments incorporated by reference. We only consider the Bangs' arguments to the extent they are presented in their briefs before this Court.

III

[¶9]  The Bangs argue the district court erred in granting Continental summary judgment. They contend the court erred in declaring Continental has the right to install pipeline facilities on the subject property and in granting Continental the right to install pipeline facilities.

3

[¶10] The district court granted Continental summary judgment, denying the Bangs' claims for trespass and injunction, and granting judgment declaring Continental "has the right to install a pipeline corridor, including electric line(s), fiber optic line(s), and production line(s) for oil, gas, freshwater and saltwater (collectively, "Pipeline Facilities"), on the subject properties." In reaching its decision, the court stated it is undisputed the Bangs entered the 2004 oil and gas lease, which provides in relevant part:

> Lessor . . . does grant, demise, lease and let exclusively unto the said Lessee, the land hereinafter described, with the *exclusive right* for the purpose of mining, exploring by geophysical and other methods, and operating for and producing therefrom oil and all gas of whatsoever nature or kind, *with rights of way and easements for laying pipe lines, and erection of structures thereon to produce, save and take care of said products*[.]

(Emphasis added.) The court further stated, "It is also undisputed that Continental is the mineral estate owner of the real property which is the subject matter of this litigation. Neither is there any dispute but that Continental is the operator of a spacing unit which includes the real property which is the subject matter of this litigation."

[¶11] The district court stated the Bangs did not identify "evidence that transportation of production/saltwater is not reasonably necessary to develop and produce minerals." The court also stated it sensed by the Bangs' argument that they "acknowledged at the time of the execution of the lease the 'transportation' of production water was a reasonably necessary part of the process of exploring for, developing and transporting the minerals which are the subject of the lease." "While that [lease] language may or may not specifically allow the construction of pipelines for transportation of production/saltwater," the court stated, it concluded the lease language "does not repel such a construction." "The language of that phrase is generally permissive as opposed to generally restrictive," the court concluded. "It allows for easements to do some things but does not indicate that any particular use is prohibited." The court then granted Continental summary judgment.

4

[¶12] The Bangs argue the district court erred in granting Continental summary judgment because the court erred by "finding" Continental owned the mineral estate, misapplied the accommodation doctrine, and misinterpreted the easement. The Bangs contend the court misapplied the accommodation doctrine when it misapprehended Continental owned rather than leased the mineral estate. They contend, "unlike most accommodation doctrine cases, the mineral estate is only severed to the degree the lease grants Continental the right to develop the minerals." The Bangs argue the court "misapplied the law by combining the accommodation doctrine and language of the lease." They further contend the lease is ambiguous as to whether a production water pipeline is allowed. They assert the lease "only grants authority to lay a specific kind of pipeline, that is," pipelines to produce, save, and take care of oil and gas, not production water. "The Lease explicitly limits constructing pipelines only for the transportation and production of oil and gas themselves—not a by-product produced along with oil and gas and not electric and fiber optic lines," the Bangs argue.

[¶13] Continental argues the lease explicitly and implicitly gives it the right to lay the saltwater pipeline.

[¶14] "The same general rules that govern interpretation of a contract apply to oil and gas leases." *N.D. Energy Servs., LLC v. Lime Rock Res. III-A, L.P.*, 2024 ND 159, ¶ 12, 10 N.W.3d 591 (quoting *Johnson v. Statoil Oil & Gas LP*, 2018 ND 227, ¶ 7, 918 N.W.2d 58). "The construction of a written contract to determine its legal effect is a question of law and on appeal, this Court will independently examine and construe the contract to determine if the trial court erred in its interpretation." *Id.* "Words in a contract are construed in their ordinary and popular sense, unless used by the parties in a technical sense or given a special meaning." *Id.* (quoting *Johnson*, ¶ 8). "A contract must be read and considered in its entirety so that all of its provisions are taken into consideration to determine the parties' true intent." *Id.*

[¶15] Generally, absent other rights expressly granted or reserved, or in other words, "unless the language of the conveyance repels such a construction," the mineral estate owner has "the incidental right of entering, occupying, and

5

making such use of the surface lands as is reasonably necessary in exploring, mining, removing, and marketing the minerals[.]" *Hunt Oil Co. v. Kerbaugh*, 283 N.W.2d 131, 135 (N.D. 1979) (quoting *Christman v. Emineth*, 212 N.W.2d 543, 550 (N.D. 1973)). "When mineral rights are severed from the surface, an implied easement is created whereby the mineral owner may use the surface estate for reasonably necessary operations to 'explore, develop, and transport the minerals.'" *Nw. Landowners Ass'n v. State*, 2022 ND 150, ¶ 21, 978 N.W.2d 679 (quoting *Hunt Oil*, at 135-36); *see also Sorum v. State*, 2020 ND 175, ¶ 56, 947 N.W.2d 382 ("[A] mineral estate severed from the surface estate charges the surface estate owner with an implied servitude for the owner or lessee of the mineral estate to develop the minerals." (citing *Krenz v. XTO Energy, Inc.*, 2017 ND 19, ¶ 42, 890 N.W.2d 222; *Hunt Oil*, at 135)).

[¶16] We have explained, "[u]nder a usual oil and gas lease, the lessee, in developing the leased premises, is entitled to use of the land reasonably necessary in producing the oil[.]" *N.D. Energy Servs.*, 2024 ND 159, ¶ 13 (quoting *Feland v. Placid Oil Co.*, 171 N.W.2d 829, 834 (N.D. 1969)). "Even though the surface rights of the lessee may arise by implication, it is important to note that lessee's rights are *primarily governed by the specific grant of such rights in the lease*." *Id.* (emphasis added).

> Whether the express uses are set out or not, the mere granting of the lease creates and vests in the lessee the dominant estate in the surface of the land for the purposes of the lease; by implication it grants the lessee the use of the surface to the extent necessary to a full enjoyment of the grant. Without such use, the mineral estate obtained under the lease would be worthless.

*Id.*

[¶17] In *Hunt Oil Co. v. Kerbaugh*, this Court explained the requirement that "due regard" be given to the surface owner's rights "defines, to a certain extent, a consideration in determining if the mineral owner's [or the lessee's] use of the surface is reasonably necessary," and adopted the "accommodation doctrine," as set forth by the Texas Supreme Court:

There may be only one manner of use of the surface whereby the minerals can be produced. The lessee has the right to pursue this use, regardless of surface damage. And there may be necessitous temporary use governed by the same principle. But under the circumstances indicated here; i.e., where there is an existing use by the surface owner which would otherwise be precluded or impaired, and where under the established practices in the industry there are alternatives available to the lessee whereby the minerals can be recovered, the rules of reasonable usage of the surface may require the adoption of an alternative by the lessee.

283 N.W.2d at 136 (quoting *Getty Oil Co. v. Jones*, 470 S.W.2d 618, 622 (Tex. 1971)) (cleaned up); *see also id.* at 136-37 *(quoting Getty Oil*, at 627-28, and discussing further accommodation doctrine parameters). Although whether the mineral estate owner's or lessee's use of the surface estate is "reasonably necessary" presents a question of fact, the servient surface estate owner has the burden of proof in such a determination. *Hunt Oil*, at 137; *see also Merriman v. XTO Energy, Inc.*, 407 S.W.3d 244, 249 (Tex. 2013) (stating "the surface owner has the burden to prove that (1) the lessee's use completely precludes or substantially impairs the existing use, and (2) there is no reasonable alternative method available to the surface owner by which the existing use can be continued").

[¶18] Although the district court may have misstated Continental "is the mineral estate owner," Continental possesses an exclusive leasehold interest in the mineral estate. *See N.D. Energy Servs.*, 2024 ND 159, ¶ 13 ("Even though the surface rights of the lessee may arise by implication, it is important to note that lessee's rights are primarily governed by the specific grant of such rights in the lease." (quoting *Feland*, at 834)). Thus, the lease controls the determination of the parties' rights.

[¶19] The district court concluded the Bangs did not identify "evidence that transportation of production/saltwater is not reasonably necessary to develop and produce minerals." The court understood the Bangs' argument to be based on the lease language, not that transportation of production water was not a reasonably necessary part "of the process of exploring for, developing and transporting the minerals which are the subject of the lease." On appeal, the Bangs do not challenge this portion of the court's order or assert there is a factual

dispute regarding whether the transportation of production/saltwater is reasonably necessary to develop and produce minerals. Rather, the Bangs' arguments focus on the lease language.

[¶20] This Court "has not had occasion to address what obligations a mineral developer would have in terms of giving due regard to a surface owner's existing use of the surface estate when there is a lease or other agreement binding upon the surface owner[.]" *Mosser v. Denbury Res., Inc.*, 112 F. Supp. 3d 906, 915-16 (D.N.D. 2015). We need not do so today because the Bangs have not contended that an existing surface use was unduly burdened and presented evidence that Continental had another reasonable alternative. *Hunt Oil*, 283 N.W.2d at 137; *Merriman*, 407 S.W.3d at 249.

[¶21] Under the specific circumstances of this case, we conclude our decision in *North Dakota Energy Services* is dispositive. In *North Dakota Energy Services*, we interpreted leases containing the same language at issue here. 2024 ND 159, ¶ 9. We concluded the district court did not err when it held the leases were "unambiguous" and provided the authority to use "layflat hoses" on the property. *Id.* ¶ 15. We held "use of temporary layflat hoses to transport water is the same or less of a burden on the surface property than its use of pipelines to transport oil, gas, or other products," and "[n]othing in the leases' broad language indicates an intent to exclude the lessee's use of layflat hoses." *Id.* ¶ 14.

[¶22] We agree with the district court that the inclusion of pipelines to produce, save, and take care of oil and gas in the lease does not exclude the use of other pipelines. The lease is broad, granting "exclusively" to Continental the subject property "with the exclusive right for the purpose of" producing oil and gas. The Bangs do not dispute the transportation of production/saltwater is reasonably necessary for Continental to exercise its exclusive right to develop and produce oil and gas. And nothing in the lease's broad language indicates an intent to exclude Continental's use of other pipelines to produce oil and gas. Thus, when read as a whole, the lease implicitly gives Continental the right to lay the saltwater pipeline.

8

[¶23] We conclude the district court did not err when it held the lease is unambiguous and provides Continental the authority to install pipeline facilities on the subject property.

IV

[¶24] The Bangs challenge several of the district court's evidentiary rulings made in its order on motion in limine and at trial.

[¶25] This Court reviews a district court's decision on a motion in limine for an abuse of discretion. *State v. Lutz*, 2012 ND 156, ¶ 3, 820 N.W.2d 111. "A motion in limine is a procedural tool to ensure that potentially prejudicial evidentiary matters are not discussed in the presence of the jury." *Williston Farm Equip., Inc. v. Steiger Tractor, Inc.*, 504 N.W.2d 545, 550 (N.D. 1993). "However, the exclusion of evidence by a motion in limine does not dispense with the need for the proponent of evidence to make an offer of proof so the trial court can consider the proffered evidence in the context of other evidence presented during trial." *Id.* A party challenging the exclusion of evidence must make an offer of proof at trial "demonstrating prejudice from the court's refusal to allow the evidence." *Perius v. Nodak Mut. Ins. Co.*, 2012 ND 54, ¶ 6, 813 N.W.2d 580 (quoting *Dewitz v. Emery*, 508 N.W.2d 334, 339 (N.D. 1993)).

[¶26] "A district court has broad discretion in admitting or excluding evidence at trial." *Zander v. Morsette*, 2021 ND 84, ¶ 9, 959 N.W.2d 838. This Court will not overturn a court's admission or exclusion of evidence on appeal absent an abuse of discretion. *Wollan v. Innovis Health, LLC*, 2024 ND 169, ¶ 22, 11 N.W.3d 1; *see also Olson v. Olson*, 2024 ND 224, ¶ 34, 14 N.W.3d 603 ("This Court applies an abuse of discretion standard to a district court's evidentiary ruling."). "A district court abuses its discretion when it acts arbitrarily, capriciously, or unreasonably, or when its decision is not the product of a rational mental process or if it misinterprets or misapplies the law." *Wollan*, ¶ 22 (quoting *State v. Salou*, 2024 ND 6, ¶ 7, 1 N.W.3d 602).

9

## A

[¶27] The Bangs argue the district court abused its discretion by not allowing Mark Johnson to testify as an expert witness. They argue the court erred in limiting Johnson from testifying as an expert witness as a sanction for the Bangs' failure to provide disclosure in discovery.

[¶28] The district court has broad discretion to impose appropriate sanctions for discovery abuses. *Nelson v. Nelson*, 2019 ND 221, ¶ 13, 932 N.W.2d 386. This Court reviews a district court's imposition of a discovery sanction for an abuse of discretion; we review any factual findings related to that sanction for clear error. *Id.*; *Merch. v. Corizon Health, Inc.*, 993 F.3d 733, 739 (9th Cir. 2021) ("We review a district court's imposition of a discovery sanction for an abuse of discretion, and any factual findings related to that sanction are reviewed for clear error."); *First State Bank of Roscoe v. Stabler*, 914 F.3d 1129, 1136 (8th Cir. 2019) ("In the absence of errors at law or clearly erroneous factual determinations, we review a sanctions award, including an award of attorney fees, for an abuse of discretion."); *Lee v. First Lenders Ins. Servs., Inc.*, 236 F.3d 443, 445 (8th Cir. 2001) ("We review the district court's factual findings for clear error and its decision to award sanctions for an abuse of discretion."). "A party challenging the court's sanction has the burden of showing an abuse of discretion." *State ex rel. Stenehjem v. Maras*, 2021 ND 68, ¶ 14, 958 N.W.2d 475. "A party challenging the imposition of sanctions meets his or her burden 'only when it is clear that no reasonable person would agree with the trial court's assessment of what sanctions are appropriate.'" *Id.* (quoting *Nelson*, ¶ 13).

[¶29] Rule 26(e), N.D.R.Civ.P., requires a party to supplement or correct its responses to an interrogatory in a timely manner. "No sanction is specified under N.D.R.Civ.P. 37 for a party's failure to sufficiently supplement interrogatories." *Perius*, 2012 ND 54, ¶ 10; *see also Vorachek v. Citizens State Bank of Lankin*, 421 N.W.2d 45, 50 (N.D. 1988) ("Rule 37 allows a wide spectrum of sanctions for discovery violations[.]"). "Therefore, the district court has discretion to determine an appropriate sanction for a party's failure to supplement interrogatories and may exclude expert testimony that is beyond the scope of a party's responses to interrogatories." *Perius*, ¶ 10. Appellate courts give

10

substantial deference to a district court's imposition of discovery sanctions because it is most familiar with the pretrial proceedings and the pretrial conduct of counsel. *Meyer v. U.S. Bank Nat. Ass'n*, 792 F.3d 923, 927 (8th Cir. 2015); *Greyhound Lines, Inc. v. Wade*, 485 F.3d 1032, 1035 (8th Cir. 2007).

[¶30] In its order on motion in limine, the district court concluded the Bangs disclosed Mark Johnson's qualifications to offer opinion testimony. The court further concluded the Bangs "arguably disclosed the ultimate opinions" of Johnson, noting "inconsistencies between disclosures made by the Bang[s] at different times that calls the sufficiency of those disclosures into question." The court then concluded the Bangs "entirely failed to disclose the grounds for" Johnson's opinions. The court stated it "can discern no theory, explanation, or rationale" for his opinion on damages and cannot "ensure that expert testimony is reliable as well as relevant before admitting such testimony into evidence." The court granted Continental's request to exclude Johnson's expert testimony as a sanction for the Bangs' failure to supplement their interrogatory responses or otherwise disclose the grounds for Johnson's opinions.

[¶31] The district court's finding the Bangs failed to disclose the grounds for Johnson's opinions is not clearly erroneous. The court had discretion to determine an appropriate sanction for the Bangs' failure to comply with N.D.R.Civ.P. 26(e). We conclude the Bangs failed to establish the court abused its discretion by precluding Mark Johnson from testifying as an expert witness as a sanction for the Bangs violating Rule 26(e).

B

[¶32] The Bangs argue the district court erred in excluding evidence of damages for lost land value and loss of use and access to the property. Specifically, they argue the court should have allowed John Bang and Mark Johnson to testify and offer other evidence of payments, settlement offers, and settlement agreements made by operators to landowners for the installation of oil and gas facilities in and around Dunn County. The Bangs contend evidence of other settlement agreements between operators and surface owners is statutorily required under N.D.C.C. §§ 38-11.1-04.1(2) and 38-11.1-08, and that the court's ruling is contrary

11

to caselaw. *See Cont'l Res., Inc. v. Fisher*, 102 F.4th 918, 923 (8th Cir. 2024); *Mosser v. Denbury Res., Inc.*, 2017 ND 169, ¶ 21, 898 N.W.2d 406.

[¶33] Sections 38-11.1-04.1(2) and 38-11.1-08, N.D.C.C., do not dictate what evidence is admissible for purposes of determining damages under N.D.C.C. ch. 38-11.1. The North Dakota Rules of Evidence generally control the admissibility of evidence in civil trials. N.D.R.Ev. 101, 1101(a), (b)(1). Moreover, as previously noted, a district court has broad discretion on evidentiary matters. *Hoff v. City of Burlington*, 2025 ND 62, ¶ 15, 18 N.W.3d 898. We will not overturn a court's admission or exclusion of evidence on appeal unless it has abused its discretion. *Id.*

[¶34] "Generally, relevant evidence is admissible, and irrelevant evidence is not admissible." *Zander*, 2021 ND 84, ¶ 9; *see also* N.D.R.Ev. 402. "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." N.D.R.Ev. 401. However, a district court "may exclude relevant evidence if its probative value is substantially outweighed by a danger" the evidence will confuse the issues. N.D.R.Ev. 403. "Rule 403 recognizes that relevance does not ensure admissibility. There remains the question of whether its value is worth what it costs." *Schaefer v. Souris River Telecomms. Co-op.*, 2000 ND 187, ¶ 10, 618 N.W.2d 175 (quoting *Patterson v. Hutchens*, 529 N.W.2d 561, 563-64 (N.D. 1995)). Under N.D.R.Ev. 408, evidence of discussions, offers, and agreements to settle a disputed claim are not admissible to prove or disprove the validity or amount of the claim.

[¶35] In its order on motion in limine, the district court held "evidence related to surface damage settlements is inadmissible under Rule 408 and should be excluded." The court further concluded that, "even if this were not the case, . . . settlements with other landowners are unlikely to be probative of the damages suffered specifically by the Bangs." The court explained the Bangs "offer no detail regarding the specific evidence they intend to offer on this point and offer no substantive argument for why such evidence would be probative of the Bangs' damages."

[¶36] We need not decide whether the court erred in concluding N.D.R.Ev. 408 bars settlement evidence of claims different than the one at issue at trial because we resolve this issue on the court's alternative ground. *Compare Broadcort Cap. Corp. v. Summa Med. Corp.*, 972 F.2d 1183, 1194 (10th Cir. 1992) (concluding Fed. R. Evid. 408 does not bar evidence "related to settlement discussions that involved a different claim than the one at issue in the current trial"); *Ostrow v. GlobeCast Am. Inc.*, 825 F. Supp. 2d 1267, 1274 (S.D. Fla. 2011) (concluding "the claim" in Rule 408 "refers to the situation where the settled claim and the claim being litigated arise out of the same event, although they involve different parties, such as where a single accident injures several people who otherwise have no relationship to each other, and the victims pursue their claims separately"); *Armstrong v. HRB Royalty, Inc.*, 392 F. Supp. 2d 1302, 1304-05 (S.D. Ala. 2005) (concluding "Rule 408 unambiguously requires that the claim as to which a settlement offer was made and the claim at issue in the litigation in which the offer is proffered as evidence must be the same claim"), *with Deadwood Canyon Ranch, LLP v. Fid. Expl. & Prod. Co.*, No. 4:10-cv-081, 2013 WL 11971255, at *3 (D.N.D. Nov. 27, 2013) (concluding under Fed. R. Evid. 408, "Any reference in this case to the terms of other surface damage settlements *or* of the proposed surface damage settlement offers are not admissible.").

[¶37] Addressing easement payments, the district court concluded "voluntary easement payments to other landowners are unlikely to be probative of the damages suffered specifically by the Bangs." "Again," the court explained, "the Bangs do not offer any explanation of what specific evidence they intend to offer along these lines and do not explain how such evidence is relevant to the Bangs' damages." Rejecting the Bangs' position, the court wrote, "The Bangs have offered no explanation for why settlement payments or voluntary easement payments to other landowners are probative of the damages actually suffered by the Bangs, nor can the Court discern one from the materials filed by the Bangs."

[¶38] Based on the limited information provided in response to the motion in limine, we conclude the district court did not abuse its discretion in ruling the settlement agreements were inadmissible under N.D.R.Ev. 403. We further conclude the court did not abuse its discretion in ruling the Bangs did not

13

demonstrate the voluntary easement payments were relevant to the Bangs' damages and admissible.

[¶39] At trial, the district court held the Bangs could introduce evidence of easement transactions if they could demonstrate the easements involved comparable properties and damages. The properties had to be comparable because the necessary amount to compensate for surface damages differs from property to property, depending on the specific property and its use. The Bangs had to be able to show the portions of payments for surface damages, as opposed to payments for access, to avoid litigation, or for other reasons, so the payments were comparable to the damages sought by the Bangs. Unless the properties and purpose of the payments were comparable, the court held evidence of payments inadmissible for lack of probative value of the Bangs' surface damages and because of the risk of confusing the jury. The court rejected the Bangs' arguments based on *Mosser* and *Fisher*.

[¶40] At trial, the Bangs made an offer of proof regarding Mark Johnson's expected testimony regarding "similar types of transactions." The district court affirmed its initial ruling that Johnson could not testify "of value or reduction of value based upon offers made by, or received, you know, by individuals in the context of damages under 38-11.1-04." The court held Johnson may be able to testify regarding the value of loss of use based on non-damage claims payments. The Bangs never called Johnson as a witness.

[¶41] Neither *Mosser* nor *Fisher* control the admissibility of settlement offers and agreements in this case. In *Mosser*, this Court answered certified questions from the federal district court. *Mosser* involved a lawsuit between surface estate owners and a well operator that disposed of saltwater into their pore space. Relevant to this case, we concluded:

> [T]he plain language of N.D.C.C. § 38-11.1-04 does not preclude a surface owner from recovering what others may be paying to dispose of saltwater in pore space; rather, the price per barrel others are paying for saltwater disposal may provide some probative evidence of the amount a surface owner may be damaged for "lost

14

use of and access to the surface owner's land" under N.D.C.C. § 38-11.1-04.

2017 ND 169, ¶ 30. After stating, "the price per barrel others are paying for saltwater disposal may provide some probative evidence," we specifically explained the "admissibility of proffered evidence is a matter for a trial court's discretion." *Id.* We wrote, "We do not speculate on the extent of the evidence a surface owner may proffer to establish lost use of and access to a surface owner's land, because the probative effect and admissibility of proffered evidence is a matter for a trial court's discretion." *Id.* Our conclusion "the price per barrel others are paying for saltwater disposal may provide some probative evidence" does not require third-party contracts be received into evidence. The admissibility of third-party contracts is governed by the North Dakota Rules of Evidence and within the district court's broad discretion.

[¶42] In *Fisher*, the Eighth Circuit Court of Appeals held the district court did not abuse its discretion when it admitted third-party contracts to show the surface owners' damages from the company's use of their pore space. 102 F.4th at 928. The court's conclusion was based on the unique "evidentiary landscape" of proving damages for use of pore space. *Id.* More importantly, an appellate court's conclusion a trial court did not abuse its discretion by admitting certain evidence in one case does not mean another trial court abused its discretion by not admitting similar evidence in a different case. As noted by one court, "[a]n appellate court's ruling that a trial court did not abuse its discretion in *admitting* a certain type of evidence is not authority for the proposition that it is an abuse of discretion to *exclude* similar evidence in another case." *City of Rocklin v. Legacy Fam. Adventures-Rocklin, LLC*, 303 Cal. Rptr. 3d 52, 65 (Cal. Ct. App. 2022) (quoting *Pannu v. Land Rover N. Am., Inc.*, 120 Cal. Rptr. 3d 605, 622 (Cal. Ct. App. 2011)). The *Fisher* court did not determine the third-party contracts had to be admitted into evidence; it only determined the trial court did not abuse its discretion by admitting the third-party contracts under the specific facts of that case.

[¶43] We conclude the district court did not abuse its discretion by not allowing evidence and testimony of settlement offers and agreements that the Bangs did

not demonstrate were probative of the damages they suffered. We further conclude the court did not abuse its discretion by not allowing evidence of noncomparable easement transactions. *Cf. Kartch v. EOG Res., Inc.*, No. 4:10-cv-014, 2011 WL 5509076, at *10 (D.N.D. Nov. 10, 2011) (stating because the amount of payments to surface owners under N.D.C.C. ch. 38-11.1 "may be based in part upon other factors . . . they are not probative evidence of fair market value").

C

[¶44] The Bangs argue the district court abused its discretion by not permitting testimony and evidence related to future damages for agricultural production and income loss.

[¶45] Section 38-11.1-08.1, N.D.C.C., provides "[t]he mineral developer shall pay the surface owner a sum of money equal to the amount of damages sustained by the surface owner and the surface owner's tenant, if any, for loss of agricultural production and income caused by oil and gas production and completion operations."

[¶46] In its order on motion in limine, the district court addressed the admissibility of the evidence the Bangs intended to offer to support their claim for future damages for loss of agricultural production and income. In response to Continental's motion in limine, the Bangs proposed to introduce evidence that Continental's facilities made 23.8 acres of their property unfarmable for the next 125 years, and 23.1 acres 50% less productive for the next 100 years. The Bangs calculated the 125-year period by assuming Continental or its successor would remove the facilities in 100 years and it would take 25 years to reclaim the property. Based on past crop yields, prices, expenses, and the assumed time periods, the Bangs calculated the damages they would sustain for future loss of agriculture production. The court concluded "such evidence is speculative as a matter of law" and that "[w]hatever probative value such evidence may have is overwhelmed by the risk of unfair prejudice."

[¶47] At trial, the Bangs made the following offer of proof:

16

[John Bang] would have offered testimony related to the averages of spring wheat pricing, as well as the average yields on his property, as well as offer testimony, which actually had been received, that he'd not been told by Continental as to when the well pads would be removed, and that would allow for calculation of future ag production damages.

After the offer of proof, the district court made it clear it was not ruling that all evidence that might demonstrate future crop loss is inadmissible, only evidence based on past yields. The court specifically stated future crop loss could be proved by some other method.

[¶48] In *Nagel v. Emch*, 74 N.D. 631, 23 N.W.2d 879, 881 (1946), the district court permitted the plaintiff farmer to show his farm's loss of income in 1944 by comparing the farm's 1944 income with the farm's income in previous years. On appeal, this Court stated, "The difference of income is highly speculative. Differences in seasons, rains, weather conditions, prices, and all the other contingencies which affect the North Dakota farmer are so unpredictable that they offer no basis for computation." *Id.* at 882. Similarly, in *Johnson v. Monsanto Co.*, 303 N.W.2d 86, 93 (N.D. 1981), this Court stated the farmer's 1977 sunflower crop yield "is no indication that a similar or higher yield would have occurred in 1978." We concluded "an award of damages based upon the probable yield of the 1978 crop would require that the jury engage in speculation and conjecture because no evidence was presented which established the 1978 crop yield." *Id.*

[¶49] The district court did not preclude the Bangs from introducing evidence showing future damages for agricultural production and income loss; rather, it excluded evidence of future agricultural damages based on past yields. The Bangs presented no evidence in their response to Continental's motion in limine or in their offer of proof which indicates their past crop yields, prices, and expenses are indicative of their crop yields, prices, and expenses for the next 125 years. They also provided no credible information or explanation as to why they should receive damages due to the unfarmable property for the next 125 years.

17

[¶50] We conclude the district court did not abuse its discretion by not permitting testimony and evidence regarding past crop yields, prices, and expenses to show future damages for agricultural production and income loss.

V

[¶51] The Bangs argue the district court erred by entering a directed verdict on loss of improvements to the topsoil.

[¶52] Under N.D.R.Civ.P. 50, "judgment as a matter of law" has replaced the terms "directed verdict" and "judgment notwithstanding the verdict." *See id.*, Explanatory Note. "The standard for determining whether judgment as a matter of law should be granted is the same as that for a directed verdict or judgment notwithstanding the verdict." *Minto Grain*, 2009 ND 213, ¶ 8 (quoting *Wagner v. Squibb*, 2003 ND 18, ¶ 4, 656 N.W.2d 674). A party moving for judgment as a matter of law is claiming the evidence is insufficient to create a fact question for the jury. *Mitzel v. Vogel L. Firm, Ltd.*, 2024 ND 171, ¶ 36, 11 N.W.3d 717. Whether the evidence is sufficient to create a question of fact is a question of law decided by the district court. *Id.* We examine the trial record and apply the same standard the district court initially applied. *Id.*

[¶53] The Bangs argue that John Bang testified on his qualifications and what he did to foster, develop, improve, and maintain the topsoil to ensure consistent or increased crop yields and healthy soil on the subject property. The Bangs contend the district court erred in determining he did not offer sufficient evidence to prove topsoil was included within the meaning of improvements under N.D.C.C. § 38-11.1-04.

[¶54] Section 38-11.1-04, N.D.C.C., provides, in part: "The mineral developer shall pay the surface owner a sum of money equal to the amount of damages sustained by the surface owner and the surface owner's tenant, if any, for . . . lost value of improvements caused by drilling operations." The term "improvements" is not defined in N.D.C.C. ch. 38-11.1. At trial, the district court was not convinced "normal farming usage of farm land by things as crop rotation, use of fertilizer, and other typical methods of farming would constitute an improvement to the topsoil or any other aspect of the soil in general." In

18

granting the Rule 50 motion on this issue, the court concluded Bangs presented "virtually no evidence" supporting loss of value or damage to improvements.

[¶55] Statutory interpretation presents a question of law, fully reviewable on appeal. *RMM Props., L.L.L.P. v. City of Minot*, 2024 ND 213, ¶ 8, 14 N.W.3d 31. "Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears, but any words explained in [the century] code are to be understood as thus explained." *Id.* ¶ 9 (quoting N.D.C.C. § 1-02-02).

[¶56] The term "improvement" is generally understood to mean "[a]n addition to property, usu. real estate, whether permanent or not; esp., one that increases its value or utility or that enhances its appearance." *Improvement*, *Black's Law Dictionary* 904 (12th ed. 2024). An "improvement" is generally understood to be separate and distinct from the land, such as a sewer or fence. *Woodrock, Inc. v. McKenzie Cnty.*, 2020 ND 182, ¶ 11, 948 N.W.2d 20 (stating "the common definition of 'improvement' as it relates to real property is, 'a change or addition to land or real property, as a sewer, fence, etc., to make it more valuable.'" (quoting *Bellemare v. Gateway Builders, Inc.*, 420 N.W.2d 733, 736 (N.D. 1988))). In other words, an "improvement" is generally understood as an "addition" to the land, not the land itself. *See* 42 C.J.S. *Improvements* § 1 (May 2025 Update) ("An improvement must be tangible property, and is characterized as an improvement only if it is affixed to the realty."). "Typical improvements include: the erection of building, replacing old buildings with new ones, substantial repairs to buildings necessary for preservation, making of substantial additions to or changes in existing buildings, the construction of sidewalks, the erection of fences, and the preparation of land for building sites." *Id.* That an improvement is not the land itself is supported by many North Dakota statutes referencing property, land, parcels, and lots and "improvements thereon." *See* N.D.C.C. §§ 15-07-20; 55-05-01; 54-17-10(3); 32-15-04; 40-51.2-04; 32-15-22; 32-17-08.

[¶57] The Bangs appear to acknowledge an improvement is distinct from the land. They argue, "'Land' is not 'topsoil.'" We disagree. "Land" is generally understood to include "soil." *See State v. Coffee*, 556 P.2d 1185, 1193 (Idaho 1976) ("Normally, 'land' means a property right and includes all things physical upon

the earth, such as soil, trees, and grass."); 63C Am. Jur. 2d *Property* § 13 (May 2025 Update) ("The term 'land' includes the surface of the earth and everything over and under it, including minerals in place. 'Land' includes . . . the soil[.]").

[¶58] Under N.D.C.C. § 38-11.1-04, Continental must pay Bangs damages "for lost land value." Topsoil is a component of the land, and can be considered when determining the value of the land. To the extent the Bangs' land value was enhanced because of its topsoil, the Bangs were awarded damages for lost land value.

[¶59] We conclude topsoil is not an "improvement" under the facts presented here. Accordingly, we conclude the district court did not err in granting judgment as a matter of law denying the Bangs' claim for damages based on topsoil being an improvement to their property.

VI

[¶60] The Bangs argue the district court made two errors in its jury instructions.

[¶61] Generally, this Court reviews jury instructions "as a whole and, if the instructions, as a whole, correctly advise the jury on the law, they are sufficient although part of the instructions, standing alone, may be insufficient or erroneous." *Mitzel*, 2024 ND 171, ¶ 38 (quoting *State v. Goodale*, 2024 ND 120, ¶ 8, 8 N.W.3d 271).

[¶62] First, the Bangs argue the district court erred in removing a portion of a sentence in their proposed instructions. The removed language stated the purpose of damages is to provide the surface owner the "maximum amount of constitutionally permissible" protection. The removed language comes from N.D.C.C. § 38-11.1-02., which states the "purpose" of N.D.C.C. ch. 38-11.1. The Bangs contend removing this language deprived the jury of the knowledge of the law and deprived the Bangs the ability to argue the law at closing argument. Second, the Bangs argue the court erred in allowing the use of the word "diminution" in the jury instructions, "thereby limiting the damages for lost land value" to just the property's loss in fair market value.

20

[¶63] The Bangs have not demonstrated the jury instructions did not correctly advise the jury on the law without their requested language. The stated purpose of N.D.C.C. ch. 38-11.1 does not define the proper measure of damages. The jury instructions provided numerous instructions addressing damages; the Bangs have not identified any aspect of any instruction that improperly advised the jury. The district court is not required to give instructions in the specific language requested by a party if the instructions given fairly and adequately inform the jury of the law. *Schlossman & Gunkelman, Inc. v. Tallman*, 1999 ND 89, ¶ 30, 593 N.W.2d 374; *Wolf v. Est. of Seright*, 1997 ND 240, ¶ 3, 573 N.W.2d 161. The Bangs have not demonstrated the district court's instructions did not fairly and adequately inform the jury of the law without their requested language. As the court noted, the Bangs were entitled to all the damages provided by law under the instructions whether the requested language was included or not.

[¶64] The Bangs also have not demonstrated the jury instructions did not correctly advise the jury on the law because of the inclusion of the word "diminution." They argue lost land value is not the only method of proving damages under N.D.C.C. § 38-11.1-04. However, the Bangs acknowledge the jury instructions did not limit damages to lost land value. In addition to lost land value, the instructions addressed surface damages, damages for loss of agricultural production and income, and damages for lost use of access to the land. The word "diminution" was only used in the instruction addressing damages for lost land value. That instruction contained five paragraphs informing the jury how to determine damages for lost land value, including how to determine fair market value and to measure the Bangs' lost land value. The Bangs have not demonstrated the district court's instructions did not fairly and adequately inform the jury of the law because of the inclusion of the word "diminution" in the instruction on damages for lost land value.

[¶65] Having reviewed the instructions as a whole, we conclude the instructions fairly and adequately informed the jury of the law and the district court did not err in instructing the jury.

21

## VII

[¶66] The Bangs argue the district court should have granted the Bangs' motions under N.D.R.Civ.P. 59 and 60. This Court will not reverse a district court's decision on a motion for a new trial under N.D.R.Civ.P. 59 or on a motion for relief from judgment under N.D.R.Civ.P. 60 unless the court abused its discretion. *Flaten v. Couture*, 2018 ND 136, ¶ 27, 912 N.W.2d 330; *Watts v. Magic 2 x 52 Mgmt., Inc.*, 2012 ND 99, ¶ 11, 816 N.W.2d 770.

[¶67] The Bangs' argument on this issue consists of two sentences:

> Bang reincorporates arguments already asserted in this brief, as well as in the briefs asserting justification for a new trial, here. (R464;468;476) The denial of Bang's Rule 59 and 60 motions (R478) was error for the reasons presented by Bang and this Court should reverse the district court and order a new trial.

[¶68] For the reasons previously stated, we do not consider the Bangs' arguments made to the district court. We have addressed and rejected the Bangs' arguments presented to this Court. Thus, we conclude the district court did not abuse its discretion in denying the Bangs' motions under N.D.R.Civ.P. 59 and 60.

## VIII

[¶69] "Incorporating by reference" arguments made to the district court, the Bangs argue the district court's decision regarding costs should be reversed. We do not consider the Bangs' arguments made to the district court. Because the Bangs' briefs on appeal do not address this issue, we decline to address it.

## IX

[¶70] We have considered the parties' other arguments and conclude they are unnecessary for our decision, inadequately briefed, or are without merit. We affirm the amended judgment and order denying a new trial.

[¶71] Jon J. Jensen, C.J.
Daniel J. Crothers
Lisa Fair McEvers

Jerod E. Tufte
Douglas A. Bahr